**CARMELO AYALA, Plaintiff**

**v.**

**LOCKHEED MARTIN CORPORATION, Individually and as Successor-in-Interest to MARTIN MARIETTA CORPORATION; MARTIN MARIETTA ALUMINUM, INC.; MARTIN MARIETTA ALUMINUM PROPERTIES, INC.; MARTIN MARIETTA CORPORATION, Individually and as Successor-in-Interest to MARTIN MARIETTA ALUMINUM, INC. and to MARTIN MARIETTA ALUMINUM PROPERTIES, INC.; and GENERAL ENGINEERING CORPORATION, Defendants**

Case No. SX-08-CV-296,
Consolidated Under: In re: Alumina Dust Claims, SX-09-MC-031

Superior Court of the Virgin Islands

Division of St. Croix

March 3, 2017

291

THOMAS ALKON, ESQ., Law Office of Thomas Alkon, Christiansted, USVI, *For Plaintiff.*

WILFREDO A. GÉIGEL, ESQ., Law Offices of Wilfredo A. Géigel, Gallows Bay, USVI, *For General Engineering Corporation, Defendant.*

KEVIN A. RAMES, ESQ., K.A. Rames, P.C., Christiansted, USVI, *For Lockheed Martin Corporation, Martin Marietta Corporation, Martin Marietta Aluminum, Inc., and Martin Marietta Properties, Inc.*

WILLOCKS, *Administrative Judge*

## MEMORANDUM OPINION

(March 3, 2017)

**BEFORE THE COURT** is a motion filed by Defendant Lockheed Martin Corporation ("Lockheed Martin") to consolidate nineteen cases

together. Plaintiff Carmelo Ayala did not file a response. Defendant General Engineering Corporation ("GEC") also did not file a response, but because Lockheed Martin failed to serve GEC with a copy of its motion. Notwithstanding this deficiency, the Court will proceed to rule on Lockheed Martin's motion, rather than order service on GEC and await a response, because Ayala (and the eighteen other plaintiffs) have all agreed to dismiss their claims against GEC. For the reasons explained further below, the Court will grant Lockheed Martin's motion, but only in part. Lockheed Martin's request to consolidate a set of cases together under *Ayala* must be denied because the same cases are being managed already under a master case and have been subject to a common case management order long before Lockheed Martin filed this motion. Although consolidating the cases is not appropriate at this juncture, designating one of the cases as a lead case is. This is, in essence, what Lockheed Martin is seeking. Lastly, the Court must also address a concern revealed by Lockheed Martin's motion, namely the plagiarism of another court's opinion without any attribution or citation.

## BACKGROUND

The background of this case as well as the other eighteen cases[1] referenced in Lockheed Martin's Motion to Consolidate was recently summarized in another opinion. *See generally In re: Alumina Dust Claims*, 67 V.I. 172 (Super. Ct. 2017). The Court need not restate the background here, except to note that "[b]etween October 2007 and June

---

[1] The eighteen other cases cited in Lockheed Martin's motion are: *Rudolph Christopher v. Lockheed Martin Corporation, et al.*, SX-08-CV-297; *Lawrence Clark v. Lockheed Martin Corporation, et al.*, SX-07-CV-500; *Ralph Cook v. Lockheed Martin Corporation, et al.*, SX-08-CV-060; *Thomas Cross v. Lockheed Martin Corporation, et al.*, SX-08-CV-063; *Henry Francis v. Lockheed Martin Corporation, et al.*, SX-08-CV-054; *Arthur George v. Lockheed Martin Corporation, et al.*, SX-07-CV-501; *Irving J. Christina v. Lockheed Martin Corporation, et al.*, SX-08-CV-058; *Gorgonius Jones v. Lockheed Martin Corporation, et al.*, SX-08-CV-057; *Erwin LaBast v. Lockheed Martin Corporation, et al.*, SX-07-CV-502; *George Lee v. Lockheed Martin Corporation, et al.*, SX-07-CV-505; *Rostrom Lindo v. Lockheed Martin Corporation, et al.*, SX-08-CV-055; *Arnim Metiver v. Lockheed Martin Corporation, et al.*, SX-08-CV-056; *Richard Murray v. Lockheed Martin Corporation, et al.*, SX-08-CV-061; *Ramon Peguero v. Lockheed Martin Corporation, et al.*, SX-08-CV-053; *Samuel Prime v. Lockheed Martin Corporation, et al.*, SX-08-CV-295; *Eustacius Regis v. Lockheed Martin Corporation, et al.*, SX-08-CV-298; *Antonio Sealey v. Lockheed Martin Corporation, et al.*, SX-08-CV-062 ; and *Angel Velez v. Lockheed Martin Corporation, et al.*, SX-08-CV-249.

2008, twenty-two men filed lawsuits for injuries allegedly caused by exposure to toxic dusts during their employment at the former alumina refinery on St. Croix." *In re: Alumina Dust Claims*, 67 V.I. at 175 (Super. Ct. 2017). Pursuant to standard court procedures, "the Clerk's Office . . . assigned each case at random among the judges in the St. Croix District." *Id.* at 175. Ayala filed his complaint on June 11, 2008 and the Clerk's Office assigned his case to Judge Darryl Dean Donohue, Sr. *Cf. id.* at 180. Lockheed Martin and GEC each appeared and answered Ayala's complaint.

Approximately two years later, when it appeared that the parties had not taken any action in the case, Judge Donohue issued an order, entered October 26, 2010, and directed Ayala to take steps to move his case forward within thirty days or face dismissal for failure to prosecute. After five months passed and Ayala failed to respond, Judge Donohue dismissed the case. *Cf. id.* at 180. Five days later, on April 4, 2011, Ayala filed a motion for reconsideration. He explained that his case

> was consolidated for Discovery purposes together with 21 similar cases by Order of Superior Court Judge, Edgar Ross on June 9th, 2009, under the caption, *In re: Alumina Dust Claims*. Shortly after the Court's 30 day Order of October 26, 2010 Lockheed Martin filed on November 22, 2010 a Summary Judgment motion in the lead consolidated case of *Erwin LaBast v. Lockheed Martin, et al.* The Motion effects [sic] all of the consolidated cases because Lockheed Martin argues that the Virgin Islands Workmen's Compensation Act bars Erwin LaBast and by inference each of the other 21 consolidated cases from filing a law suit against it. Naturally, this Motion was of major importance and was immediately responded to. Indeed an Opposition to the Motion was filed, a Reply Brief, a Motion to File a Sur-Reply, an Order granting permission to file a Sur-Reply and a Sur-Reply was filed on March 11, 2011. These Motions and Responses were directed to Judge Harold Willocks, who counsel understood was handling all of the above mentioned consolidated cases. *Id.* at 180-181 (paragraph breaks, ellipses, brackets, and citation omitted) (italics added).[2]

---

[2] The motion quoted in the *Alumina Dust Claims* opinion was filed by Ralph Cook. However, the Court noted in that opinion that Cook and Ayala (and three other plaintiffs whose cases

Ayala further explained that, per the June 9, 2009 Case Management Order, Judge Ross had approved his request (made jointly with the other parties) to have all of the cases managed together under a master case and docket. However, "none of the parties moved the Presiding Judge to reassign the cases . . . still assigned to the other judges." *Id.* at 179.

In light of this background, Judge Donohue, by order entered April 20, 2011, granted Ayala's motion for reconsideration, vacated the March 30, 2011 dismissal order, and reopened this case. By vacating his dismissal order, Judge Donohue acknowledged that the order was issued in error. However, the order was issued only because the Superior Court's case file and docket did not show that Ayala was moving his case. *Cf. id.* at 181 ("Certified copies of the June 9, 2009 order were not placed in the files, the court noted, nor entered on the dockets. Therefore, the court dismissed the matters without knowledge of the consolidation order." (quotation marks, ellipsis, brackets, and citation omitted)). In addition, after learning that all of the cases under the *Alumina Dust Claims* master docket were not assigned to the same judge, despite being subject to the same case management order, Judge Donohue issued another order. This order, entered April 20, 2011, but under the *Alumina Dust Claims* master case and in his capacity as Presiding Judge of the Superior Court, directed

> the Clerk's Office to designate [LaBast's] case number SX-07-CV-502 as the master case and to change its caption to *In re: Alumina Dust Claims*. To avoid further confusion, Judge Donohue also directed the Clerk's Office to add copies of his order and Judge Ross's June 9, 2009 Order to each individual case file and docket . . . [to show their] manage[ment] under a master case. *Id.* at 182.

The Clerk's Office reassigned Ayala to the undersigned judge on April 21, 2011.

Three months later, on July 15, 2011, Lockheed Martin "filed approximately seventeen more motions for summary judgment, not counting the earlier motion filed in *LaBast*." *Id.* Although "[e]ach motion noted in the caption which plaintiff it related to . . . all of the motions . . . [were filed and docketed] in the master case (which is also where all of

_____

were also dismissed) all "gave the same reason[s] for reopening" their cases. 67 V.I. at 182.

the responses and replies were later filed)." *Id.* Subsequently, on April 13, 2012, Ayala and GEC filed a stipulation to dismiss Ayala's claims with prejudice, which this Court approved by order entered April 26, 2012. More than a year and a half after Judge Donohue had issued his April 20, 2011 Reassignment Order — and nearly three and a half years after Judge Ross had issued his June 5, 2009 Case Management Order — Lockheed Martin filed its November 29, 2012 Motion to Consolidate, but in *Ayala*, not *Alumina Dust Claims* or *LaBast*.

Nothing further has been filed to date in this case other than a discovery notice filed by Ayala on May 28, 2015. However, the Court recently directed the Clerk's Office to assign a new case number to the master case once problems came to light with two different cases — *Erwin LaBast v. Lockheed Martin Corporation, et al.* and *In re: Alumina Dust Claims* — having the same case number. In creating a new docket for the master case, the Clerk's Office added all of the motions, notices, and other papers that concerned all of the parties to the master docket and removed all of the motions, notices, or other papers that concerned only an individual plaintiff and refiled and redocketed those papers within each plaintiff's respective case file and docket. Because Lockheed Martin filed its Motion to Consolidate in *Ayala*, the motion is pending only in this one case.

## DISCUSSION

■ "In general, every motion filed remains pending until 'ruled upon, dismissed, or withdrawn.' " *Der Weer v. Hess Oil V.I. Corp.*, 60 V.I. 91, 98 (Super. Ct. 2014) (quoting 56 AM. JUR. 2D *Motions, Rules, and Orders* § 31 (2010)). The Court has not yet ruled on Lockheed Martin's motion. Lockheed Martin also has not withdrawn the motion. *Cf. Mitchell v. Gen. Eng'g Corp.*, 67 V.I. 271, 277 (Super. Ct. 2017) ("To withdraw a motion, court approval generally is not required nor is consent of the other parties." (citations omitted)). Hence, the November 29, 2012 Motion to Consolidate remains pending. Before turning to the merits, however, the Court must address a problem with who Lockheed Martin served. Then, after discussing the merits, the Court must address another concern with substantial portions of the motion having been plagiarized from an order the Honorable Raymond L. Finch issued in *St. Croix Federation of Teachers, et al. v. Government of the Virgin Islands, et al.*

296

## A. Service of Motions on All Parties

Ayala named two defendants in his June 11, 2008 complaint: GEC and Lockheed Martin, individually and as successor to Martin Marietta Corporation, Martin Marietta Aluminum, Inc., and Martin Marietta Aluminum Properties, Inc. Lockheed Martin answered Ayala's complaint on its own behalf and on behalf of the Martin Marietta defendants on July 7, 2008. GEC answered on August 1, 2008. Despite the different capacities in which Lockheed Martin was sued, there were only two defendants in this case. Yet, when Lockheed Martin served its November 29, 2012 Motion to Consolidate, it listed Ayala, Glencore, Ltd., and St. Croix Alumina, LLC on the certificate of service. GEC was not listed on the certificate. Thus, GEC was not served. *Cf. In re Estate of Check*, 438 S.W.3d 829, 832 (Tex. Ct. App. 2014) ("In the absence of a certificate of service or some other evidence, a court cannot presume notice was received." (citation omitted)); *see also In re E.A.*, 287 S.W.3d 1, 5 (Tex. 2009) ("A certificate of service is prima facie evidence of the fact of service."); *Davis v. MCI Commc'ns Servs.*, 421 F. Supp. 2d 1178, 1182 n.2 (E.D. Mo. 2006) ("Indeed, the purpose of a certificate of service is to inform the court that the paper has been served on other parties.").

■ A written motion must have been served on all of the parties who have appeared in the case to be properly before the court. Responses to motions and replies in support should also be served on all of the parties. Indeed, all papers (except those submitted *ex parte*) should be served on all parties in a case if such papers are to be filed with the court. *Cf. People v. St. Omer*, 59 V.I. 89, 97 (Super. Ct. 2012) (" 'The law looks with disfavor on *ex parte* court action without notice, except where irreparable harm would result to the applicant before notice can be served. Notice must be given where required by a statute or court rule and notice may be required even in the silence of the statutes as to notice.' " (brackets omitted) (quoting 60 C.J.S. *Motions and Orders* § 14 (2002)).

■ The Superior Court's rules are silent regarding service of papers (other than pleadings) on the parties to a case.[3] *Accord Donastorg v. Willis*, ST-10-CV-272, 2015 V.I. LEXIS 10, at *2-3 (Super. Ct. Jan. 27,

---

[3] *But see* SUPER. CT. R. 322.1(k) ("All papers submitted to the [c]ourt must also be served on the opposing party/parties and notice evidencing such service submitted to the [c]ourt") (applicable in the Appellate Division of the Superior Court).

2015) ("Although the 'summons and process shall be served in the same manner as required to be served by Federal Rule 4,' the Rules of the Superior Court are silent as to how parties must serve any other pleadings and papers." (brackets and footnote omitted) (quoting SUPER. CT. R. 27(b)). For a number of years, the practice in the Superior Court, and its predecessor the Territorial Court, was to apply Federal Rule of Civil Procedure 5 through Superior Court Rule 7.[4] *See, e.g., First Am. Dev.*

---

[4] Before 1994, the Territorial Court of the Virgin Islands would have applied Rule 35 of the Rules of the Territorial Court, which stated in pertinent part: "Moving papers, *including proof of service on all motions*, shall be filed at least 2 days prior to the day of hearing in order that the motion may be placed on the calendar. All *ex parte* applications shall be forwarded to the office of the clerk for presentation to the court." V.I. CODE ANN., Tit. 5 App'x IV R. 35 (1982 ed.) (emphasis added) (hereinafter "5 V.I.C. App'x"). *Cf. Fla. Coca-Cola Bottling Co. v. Cafe de Paris*, 17 V.I. 301, 302 n.1 (Terr. Ct. 1981) (citing TERR. CT. R. 35 but for the two-day filing requirement); *Caribbean Jewelry Corp. v. Hartford Fire Ins. Co.*, 16 V.I. 165, 168 n.2 (Terr. Ct. 1979) (same). By 1994, Rule 35 had been repealed. *See In re: Order Amending Rules of Terr. Ct. of V.I.*, Misc. No. 81A/1994, 1994 V.I. LEXIS 23, at *5 (Terr. Ct. Nov. 16, 1994) (referencing Rule 35 as "[Repealed]"). After 1994 and until 2009, our local courts, through Territorial Court Rule 7 (now Superior Court Rule 7), would have applied the Local Rules of Civil Procedure promulgated by the District Court of the Virgin Islands. Local Rule 6(g), which went further than Federal Rule 5 and was more explicit than Territorial Court Rule 35, provided: "The movant *and respondent shall serve copies of their respective papers* upon opposing counsel before they are filed with the clerk, and such papers must indicate the time and method of service." 5 V.I.C. App'x V R. 6(g) (emphasis added). The District Court re-numbered Rule 6(g) as Rule 7.1(h) in 2006. *See In re: Amendments to Local Rules of Civ. P.*, Misc. No. 2003-06, 2006 U.S. Dist. LEXIS 101812, at *3-4 (D.V.I. Apr. 19, 2006). Then, in 2009, the District Court effectively rescinded Rule 7.1(h) by revising the Local Rules of Civil Procedure and promulgating a new Rule 7.1 that omitted the service of motion papers requirement. *See In re: Amendments to Local Rules of Civ. P., Local Rules of Crim. P., and Local Adm. Rules*, Misc. No. 2003-06 et seq., 2009 U.S. Dist. LEXIS 134082, at *1-3 (D.V.I. Nov. 30, 2009). Consequently, before 1994, Territorial Court Rule 35 at least implicitly required that motions, responses, and replies had to be served on the parties since the rule required that motion papers — not just the motion — had to be filed with the court before hearings on motions. Local Rule 6(g) was more even clear. Yet, at present, Federal Rule of Civil Procedure 5(a) only speaks of service of motions. This Court agrees with the other courts that have held that motion papers (not just motions) should be served on all parties and filed with the court. *Compare* FED. R. CIV. P. 5(a)(1) ("Unless these rules provide otherwise, each of *the following papers must be served* on every party." (emphasis added), *with In re: Adoption of V.I. Rules of Civ. P.*, S. Ct. Prom. No. 2017-0001, slip. op. at Ex. 1, p. 12 (V.I. Jan. 20, 2017) (proposed V.I. R. CIV. P. 5(a)(1) would (if adopted) provide: "Unless these rules provide otherwise, *anything filed* with the court *must be served* on every party." (emphasis added). *See also, e.g., United States v. Int'l Business Machines Corp.*, 68 F.R.D. 613, 615 (S.D.N.Y. 1975) ("It cannot be overemphasized that the service and filing of papers supporting and responding to a motion cannot be left to the volition of the individual litigant. Instead, such actions must be controlled by clearly defined rules designed to optimize fairness and effi-

*Group/Carib, LLC v. WestLB AG*, 55 V.I. 316, 341 n.1 (Super. Ct. 2011) ("In an August 12, 2011 filing, WestLB correctly observes that Lanahan failed to serve a copy of its Notice of Voluntary Dismissal on WestLB, in violation of Rule 5 of the Federal Rules of Civil Procedure."); *see also Donastorg*, 2015 V.I. LEXIS 10, at *3 (Super. Ct. Jan. 27, 2015) ("[S]ervice of any motion and any pleading other than the original complaint is governed by Federal Rule of Civil Procedure 5." (citing SUPER. CT. R. 7 in accompanying footnote)); *cf. Courtney v. O'Connor*, 59 V.I. 3, 5 (Super. Ct. App. Div. 2010) (applying Federal Rule 5 through Superior Court Rule 7 in the Appellate Division of the Superior Court before rules were promulgated for that division) ("[T]here is no indication that Appellee served a copy of this document on Appellant as required by SUPER CT. R. 7 and FED. R. CIV. P. 5(a)(1)(D). Therefore, the Court will not consider this document in deciding the motions listed above."). Recently, however, the Supreme Court of the Virgin Islands has cautioned that the Federal Rules of Civil Procedure should only be applied in the Superior Court after a thorough review of Virgin Islands statutes, Superior Court rules, and Supreme Court precedent "reveals the absence of any other applicable procedure." *Vanterpool v. Gov't of the V.I.*, 63 V.I. 563, 583 (2015) (quotation marks, brackets, and citation omitted). The Supreme Court has not addressed yet whether Federal Rule of Civil Procedure 5 (or some other authority) governs service of motions in the Superior Court. Since the Superior Court's rules and Virgin Islands statutes are silent, Federal Rule of Civil Procedure 5 would apply through the Superior Court Rule 7. Federal Rule 5 requires that *every* written motion be served on *all of the parties. See* FED. R. CIV. P. 5(a)(1)(D)-(E). Lockheed Martin did not comply with this rule.

 When a party fails to serve another party with a motion, courts have either struck the motion or denied it outright, ordered that service be made on the unnoticed party, or in appropriate circumstances, examined the

---

ciency."). *Cf. Alford v. Super. Ct. of San Diego Cnty*, 29 Cal. 4th 1033, 130 Cal. Rptr. 2d 672, 63 P.3d 228, 238 n.3 (2003) (Baxter, J., dissenting) (discussing amendments to court rule) ("Former rule 249 was renumbered and substantively amended effective January 1, 2003. In the process, the definitions of various elementary legal terms were deleted, including the phrase 'serve and file' . . . . It appears that all of these maxims, including the one directing moving parties to 'serve and file' all moving and supporting papers on the 'adverse party,' were deemed so well understood and noncontroversial as to no longer require formal definition." (citations omitted)).

merits of the motion to determine if any rights of the unnoticed party might be affected. *See, e.g., Schneider v. Colegio de Abogados de P.R.,* 187 F.3d 30, 57 (1st Cir. 1999) ("Where the moving party has failed to serve a motion on the nonmoving party, courts have struck or denied the motion or set aside the relief requested in the motion if already granted." (citing 4A Charles Alan Writ & Arthur R. Miller, *Federal Practice & Procedure* § 1143 n.13 3d ed. 1997)); *First Am. Dev. Group/Carib,* 55 V.I. at 341 n.1 (directing the plaintiff to ensure that one defendant received notice of voluntary dismissal of other defendant); *W. Bank v. Fluid Assets Dev. Corp.,* 1991-NMSC 020, 111 N.M. 458, 806 P.2d 1048, 1051 (Ct. App. 1991) (consequences of failure to serve "all parties to a lawsuit depend upon the nature of the paper involved . . . [and] whether a failure to serve a particular motion is material in affecting the unnoticed party's rights" (citations omitted)). Lockheed Martin did not serve a copy of its motion on General Engineering Corporation. So, the Court does not know if GEC might have joined or opposed the Motion to Consolidate. However, in this instance, failing to serve GEC was harmless because Ayala had agreed to dismiss his claims against GEC approximately seven months before Lockheed Martin filed the motion. Yet, even though GEC was no longer a defendant in *Ayala,* GEC was still a defendant in some of the other cases Lockheed Martin wanted consolidated with *Ayala.* For this reason, failing to serve GEC is still problematic.[5]

All nineteen of the plaintiffs whose cases Lockheed Martin wanted consolidated named GEC as a defendant. As of the date when Lockheed Martin filed its motion, GEC still remained a party in *LaBast, Peguero, Francis, Christina, Jones,* and *Cook.* Taking judicial notice of the Superior Court's files, *cf. King v. Appleton,* 61 V.I. 339, 348 (2014),

---

[5] Lockheed Martin may have neglected to serve GEC by mistake. In the caption of its Motion to Consolidate Lockheed Martin listed Glencore, St. Croix Alumina, and Alcoa as defendants in *Ayala,* but did not list GEC. "Captions serve a purpose, especially in . . . cases with multiple parties. . . . The caption is determined by the complaint . . . as filed" and it is not "change[d] on the whims of counsel." *Alumina Dust Claims,* 67 V.I. at 195 n.16 (citations omitted). *Ayala* is one of a number of cases that have similar parties. Some of the plaintiffs in the other cases have sued St. Croix Alumina and Glencore. But the June 11, 2008 complaint that Ayala filed did not name Alcoa, St. Croix Alumina, or Glencore as defendants. Yet, it did name GEC as a defendant. "Captions inform the court, the counsel, and the public who the parties are." *Id.* Mistakes in captions may cause mistakes in service. But even though Lockheed Martin included Alcoa, it also failed to list Alcoa on the certificate of service.

everyone except LaBast and Jones, had filed a stipulation in April 2012 and, like Ayala, agreed to dismiss their claims against GEC with prejudice. However, the stipulations filed in *Peguero*, *Francis*, *Christina*, and *Cook* mistakenly listed the wrong case number. To explain, Peguero, Francis, Christina, and Cook each had two different cases pending in the Superior Court at the same time. One case concerned alleged exposure to toxic substances at the oil refinery, while the other case involved the same allegations but as to the alumina refinery. All four plaintiffs mistakenly filed their April 2012 stipulations with the case number of their oil refinery cases, not their alumina refinery cases. The judges assigned at that time to the oil refinery cases, Judge Donohue and Judge Julio A. Brady, approved the stipulation by orders entered May 15, 2012 and June 18, 2012, respectively. Recently, Judge Douglas A. Brady discovered the errors and vacated all four orders. Notwithstanding the scrivener's errors in listing the wrong case numbers, Judge Brady noted that Judge Donohue, as presiding judge, had reassigned all of the individual *Alumina Dust* cases, which included *Peguero*, *Francis*, *Christina*, and *Cook*, to the undersigned judge in April 2011, a year before the stipulations with GEC were filed. Hence, even though Cook and Peguero's oil refinery cases were still assigned to Judge Donohue at the time, and Christina and Francis's oil refinery cases were still assigned Judge Julio Brady, their alumina refinery cases were not. Consequently, neither judge had the authority to approve (or reject) the plaintiffs' stipulations with GEC. *Cf. Vanterpool*, 63 V.I. at 575 (judges lack authority to make dispositive rulings in cases assigned to other judges). In addition to vacating the four orders, Judge Brady also struck the stipulations and directed the Clerk's office to redocket and refile them in each plaintiff's respective alumina refinery case and forward copies to the undersigned judge for consideration. This Court subsequently approved all four stipulations by orders entered December 28, 2016.

■ Thus, when Lockheed Martin filed its November 29, 2012 Motion to Consolidate, GEC was still a party in *Peguero*, *Francis*, *Christina*, and *Cook*. GEC is still a party in *Jones*, though technically in default as GEC has not appeared or filed an answer to date in that case. Additionally, while the Court recently allowed LaBast's sister, Miriam LaBast-Greene, to substitute for LaBast so as to continue his lawsuit as his personal representative following his death, *see Alumina Dust Claims*, 67 V.I. at 191, neither LaBast nor LaBast-Greene agreed to dismiss LaBast's claims

against GEC. LaBast-Greene did, however, file a second amended complaint on December 1, 2016 that dropped GEC as a named defendant. Hence, GEC might only be a party now in *Jones*. Nevertheless, at the time when Lockheed Martin filed its motion, GEC was still a party in some of the cases Lockheed Martin wanted consolidated. Ergo, Lockheed Martin should have served a copy of its motion on GEC — notwithstanding that GEC had already been dismissed from Ayala — particularly as it served St. Croix Alumina, Alcoa, and Glencore, none of whom were parties to *Ayala*. Consolidating cases together is generally viewed " 'as a matter of convenience and economy in administration, but does not merge the suits into a single cause, or change the rights of the parties, or make those who are parties in one suit parties in another.' " *Tremcorp Holdings, Inc. v. Harris*, 65 V.I. 364, 370 (V.I. 2016) (quoting *Johnson v. Manhattan Ry. Co.*, 289 U.S. 479, 496-97, 53 S. Ct. 721, 77 L. Ed. 1331 (1933)). *But cf. id.* at 369 (noting that some courts view consolidation as cases having lost "their separate identity and become a single action."). But the parties in each of the cases to be consolidated should still receive notice of a motion to consolidate and be given the opportunity to be heard, even though consolidation may be a matter of court discretion.

■ In this instance, notwithstanding Lockheed Martin's failure to serve all of the parties, the Court finds that GEC's rights would not be affected. All but two of the plaintiffs have formally dismissed their claims against GEC and the remaining plaintiff, LaBast-Greene, may have also informally dropped her brother's claims by failing to name GEC as a defendant in the amended complaint. *But cf. Mitchell*, 67 V.I. at 284 (dropping parties from complaints may not be sufficient to clarify the remaining parties). Only one case, *Jones*, remains in which GEC is still a party. However, since GEC had not appeared in *Jones* or filed an answer by the time when Lockheed Martin filed its motion, Lockheed Martin was not obligated to serve its Motion to Consolidate on GEC, at least as to that one case. *See* FED. R. CIV. P. 5(a)(2) ("No service is required on a party who is in default for failing to appear."). Accordingly, since GEC would not be involved in these cases, even if the Court were to consolidate them together, Lockheed Martin's failure to serve GEC is harmless here.

### B. Motion to Consolidate

Turning to the merits, Lockheed Martin seeks to consolidate nineteen individual cases "under the consolidated case name *Carmela Ayala v.*

302

*Lockheed Martin Corporation* under a new, consolidated case number, for purposes of discovery and for the filing and consideration of both dispositive and non-dispositive motions." (Def. Lockheed Martin Corp.'s Mot. to Consolidate 1-2., filed Nov. 29, 2012 (hereinafter "Def.'s Mot.").) All nineteen plaintiffs have all sued "Lockheed Martin Corporation and its predecessors in interest, Alcoa, Inc., Glencore, Ltd., f/k/a Clarendon, Ltd., and St. Croix Alumina, LLC on the basis of a claim of injuries," Lockheed Martin contends, "allegedly caused by their exposure to various substances while they were employed at the St. Croix alumina processing plant." *Id.* at 2. "Resolution of each case is likely to depend on the same facts, evidence, and witnesses and require the same legal analysis," Lockheed Martin avers. "Furthermore, the Plaintiffs in these cases have filed similar oppositions to the pending dispositive motions filed by Lockheed Martin." *Id.* at 3 (citing *St. Croix Fed'n. of Teachers v. Gov't of the V.I.*, Civ. Nos. 1:11-CV-72 & 1:11-CV-68, 2011 U.S. Dist. LEXIS 82358 (D.V.I. July 25, 2011)). Citing Federal Rule of Civil Procedure 42(a), Lockheed Martin contends that the Court can either join the cases together " 'for hearing or trial' " or " 'consolidate the actions' " or " 'issue any other orders to avoid unnecessary cost or delay.' " *Id.* (quoting FED. R. CIV. P. 42(a)). "[C]onsolidation will facilitate the proper administration of justice," Lockheed Martin contends, "allow for a consistent decision to be made, without the prospect for inconsistent rulings" and provide further "for the timely resolution of the Plaintiff's respective claims." *Id.* at 3.

■ As noted above, Ayala did not file a response to Lockheed Martin's motion and GEC, the only other defendant in this case, was not served. The other companies who were served, Glencore and St. Croix Alumina, also did not respond. So, Lockheed Martin's motion is unopposed. But a "motion is not automatically granted simply because it is unopposed." *Alumina Dust Claims*, 67 V.I. at 187 (quotation marks, parentheses, and citation omitted). That is, courts must still determine whether granting the motion is appropriate. This responsibility is particularly apt in this instance because the nineteen cases Lockheed Martin wants consolidated were being coordinated already under a master case at the time when Lockheed Martin filed this motion.

As the Court explained in its prior opinion, beginning in 2008 and continuing into 2009, Judge Francis J. D'Eramo began scheduling the

individual cases that were assigned to him at that time, which included *LaBast. See Alumina Dust Claims*, 67 V.I. at 176 . After a number of hearings, including hearing argument from the parties on the different approaches courts have taken to managing multiple cases simultaneously with similar parties and claims, Judge D'Eramo settled on a bellwether approach. *See id.* at 178. Judge D'Eramo passed away a few months later. But before he died, he directed the parties to meet and confer and agree upon the provisions of a common case management plan. *See id.* ("Counsels had sixty days to submit a proposed case management order, but in substantially the same form as the Proposed Order filed by Erwin LaBast on January 8, 2009." (quotation marks, ellipsis, and citation omitted)). Counsel filed their stipulated proposed case management order on May 27, 2009. However, because Judge D'Eramo had passed away by then, Judge Edgar D. Ross, a senior judge designated to preside over Judge D'Eramo's cases until a successor was appointed, approved the proposed order on June 5, 2009. The Clerk's Office entered the Case Management Order on June 9, 2009. That Order directed that "[t]he Court shall create a master file and a master docket for the cases listed in Schedule A which shall be caption[ed] *In re: Alumina Dust Claims*." (Stip. Proposed Case Mgmt. Order 1, filed May 27, 2009, *LaBast v. Lockheed Martin Corp.*, SX-07-CV-502.) But the Order did not state that the individual cases were consolidated.

To be fair, what Lockheed Martin seeks in its November 29, 2012 Motion to Consolidate has not been ordered yet by the Court. Thus, Lockheed Martin's Motion to Consolidate would not be moot. *Cf. Der Weer*, 60 V.I. at 98-99 ("A motion becomes moot when something occurs after a motion is filed that resolves the issues raised in that motion."). In this instance, the "something" that might have rendered Lockheed Martin's motion moot occurred *before* Lockheed Martin filed its motion, not after. But again, neither the June 5, 2009 Case Management Order, nor the April 20, 2011 Reassignment Order, directed that the individual cases were consolidated and consolidation — not coordination under a master case — is what Lockheed Martin is requesting. *But cf. Alumina Dust Claims*, 67 V.I. at 181 ("Judge Donohue ordered that all of the cases listed on the June 9, 2009 Order be reassigned to the undersigned judge. *Id.*

(citing 4 V.I.C. § 72b(a) *and* FED. R. CIV. P. 42(a))." (emphasis added) (citing April 20, 2011 Reassignment Order)).[6]

■ Consolidation of cases in the Superior Court is governed by Federal Rule of Civil Procedure 42, as applied through Superior Court Rule 7, "because there is no local rule, statute, or precedent from th[e Supreme] Court addressing the same subject matter." *Appleton v. Harrigan*, 61 V.I. 262, 271 n.10 (2014) (citations omitted)). Another Superior Court judge recently touched on the difference between consolidation and coordination, particularly within the context of multiple cases being managed at the same time under a master case, and surmised that "coordination might be a better term to use, particularly in reference to complex or mass tort cases involving multiple plaintiffs suing the same or similar defendants for the same or similar injuries." *In re: Cases Removed*

---

[6] Judge Donohue's April 20, 2011 Reassignment Order could be construed as having ordered both the reassignment of the individual *Alumina Dust Claims* cases and also their consolidation since the order cited both the statutory authority of the presiding judge to reassign cases and the federal rule of civil procedure that authorizes consolidation. The scope of the authority of the Presiding Judge of the Superior Court and the Administrative Judge of the Superior Court have only been addressed in recent years by Virgin Islands courts. Compare *Vanterpool*, 63 V.I. at 574-75 & n.4, and *Dunston v. Mapp*, 1:16-cv-038, 2016 U.S. Dist. LEXIS 95839, at *25-27 (D.V.I. July 22, 2016), *appeal dismissed as moot*, 672 Fed. Appx. 213 (3d Cir. Dec. 22, 2016), which discuss the authority generally of the presiding judge, with *Alumina Dust Claims*, 67 V.I. at 193, and *In re: Cases Removed to the District Court of the Virgin Islands*, 2016 V.I. LEXIS 154, at *55-57 n.30 (citing cases), which discuss decisions of administrative judges that may not have been authorized. No court has had occasion yet to address whether the presiding judge can issue a ruling, dispositive or non-dispositive, in a case assigned to another judge, except when the presiding judge is acting in an emergency situation for the assigned judge, *cf. Vanterpool*, 63 V.I. at 573, or pursuant to her or his statutory authority to reassign cases among the judges to balance their workloads. *See id.* at 574 n.4. The reasoning of *Vanterpool* could call into question or even nullify Judge Donohue's April 20, 2011 Reassignment Order if it were construed as having reassigned *and* consolidated the *Alumina Dust Claims* cases together. *But cf. Fahie v. Ferguson*, ST-16-CV-638, 2017 V.I. LEXIS 33, at *4-7 (Super. Ct. Feb. 23, 2017) (order by presiding judge consolidating two cases, one assigned to presiding judge and the other to another judge, and reassigning both to same judge). Although the Supreme Court of the Virgin Islands has not expressly held yet that consolidation is a decision entrusted to the discretion of the trial court, other courts have, *see, e.g., Williams v. Gavin*, 640 Fed. Appx. 152, 155 (3d Cir. 2016) ("A district court has broad discretion to consolidate matters involving common questions of law or fact."), because the language of the rule provides "the court may" consolidate. FED. R. CIV. P. 42(a). If consolidation is a matter of discretion, no judge, including presumably the presiding judge, has the authority to issue an order consolidating cases assigned to other judges. *Cf. Vanterpool*, 63 V.I. at 575. Here, however, it appears Judge Donohue believed the cases were consolidated already by Judge Ross, but just not reassigned to him.

*to the Dist. Ct. of the V.I.*, SX-98-CV-109 et seq., 2016 V.I. LEXIS 154, at *27-28 n.17 (Super. Ct. Sept. 21, 2016); *accord Manual for Complex Litigation* § 10.123 (4th ed. 2004) ("Complex litigation frequently involves two or more separate but related cases. All pending related cases or cases that may later be filed in the same court, whether or not in the same division, should be assigned at least initially to the same judge. Pretrial proceedings in these cases should be *coordinated or consolidated* under Federal Rule of Civil Procedure 42(a), even if the cases are filed in more than one division of the court." (emphasis added)); *cf. First State Ins. Co. v. Super. Ct. of Los Angeles Cnty.*, 79 Cal. App. 4th 324, 94 Cal. Rptr. 2d 104, 109 (2000) ("Complex litigation means those cases that require specialized management to avoid placing unnecessary burdens on the court or the litigants. Complex litigation is not capable of precise definition but may involve, for example, multiple related cases, extensive pretrial activity, extended trial times, difficult or novel issues, and postjudgment judicial supervision, or may concern special categories such as class actions; however, no particular criterion is controlling and each situation must be examined separately." (quotation marks and citation omitted)). In the Virgin Islands, consolidation has at best been used imprecisely in reference to complex litigation. *Cf. In re: Cases Removed*, 2016 V.I. LEXIS 154, at *27 n.17 ("Consolidation means different things in different contexts." (citation omitted)).

Until recently "the Superior Court, and the Territorial Court before it, often designated one plaintiff's case as a master case, akin to a lead plaintiff in a class action." *Alumina Dust Claims*, 67 V.I. at 194 (citation omitted)); *accord In re: Cases Removed*, 2016 V.I. LEXIS 154, at *27-28 n.17 ("Unfortunately, instead of giving the *Manbodh* master case a new or a different case number, the same number the Clerk's Office had assigned to the group complaint Kelvin Manbodh and others filed on May 23, 1997 was also used as the master case number."); *In re: Refinery Dust Claims*, SX-06-CV-078, 2016 V.I. LEXIS 48, at *5 (Super. Ct. May 3, 2016) ("In August 2007, the Court consolidated the Group One plaintiffs and the Group Two plaintiffs, and issued a Case Management Order which created a master case file and docket, captioned as *In Re: Refinery Dust Claims*, and *used Plaintiff Cuthbert Anthony's case number*, SX-06-CV-78, as the master docket number." (emphasis added)). *But cf. Gov't of the V.I. v. Santiago*, 937 F. Supp. 1157, 1162 (D.V.I. App. Div. 1996) (error allowing criminal contempt matter to be prosecuted within the

same criminal action in which the contempt occurred) ("Because the criminal contempt was a separate criminal action, utilization of the caption 'Government of the Virgin Islands v. Daniel Santiago and Leonico Santiago, Crim. No. 871/1994' to prosecute the criminal contempt charge was both misleading and erroneous."). While at first this practice appeared to work well, over a period of time problems began to surface. Motions, notices, and other papers specific to the plaintiff whose case file and number was being used as a master case eventually became indistinguishable from the motions, notices, and other papers generated by the master case that concerned all of the individual cases. Discerning which papers concerned all of the individual plaintiffs from those papers that concerned only Kelvin Manbodh or Anthony Cuthbert, for example, has become increasingly difficult with the passage of time in light of the volume of papers generated by each master case.

■ ■ Hence, when Judge Donohue designated LaBast's case file and number to be used as the case file and number for the *Alumina Dust Claims* master case, he was simply following this past practice. But "the result was [also] two cases with the same case number." *Alumina Dust Claims*, 67 V.I. at 194. The problem with this practice came to light recently in *LaBast. See id.* at 197 ("[B]efore the Presiding Judge could consider the reassignment motion, the Clerk's Office had to first assign a new case number to the master case and then disentangle *LaBast* from *In re: Alumina Dust Claims*."). To fix it, this Court modified that portion of Judge Donohue's April 20, 2011 Reassignment Order that required *LaBast* and *Alumina Dust Claims* to share the same case file and number and directed the Clerk's Office to assign a new number to the master case. Notwithstanding the concerns that arose later, Judge Donohue's Reassignment Order did clarify (albeit not in so many words) that individual cases being managed under a master case should be assigned to the same judge and further that the master case should be a separate case with its own case number and caption. It is in part for this reason that Lockheed Martin's request "for an order consolidating the cases . . . under the consolidated case name *Carmelo Ayala v. Lockheed Martin Corporation* under a new, consolidated case number, for purposes of discovery" must be denied. (Def.'s Mot. 1-2.)

First, discovery and all other aspects of pretrial procedure in *Ayala* — and in the other eighteen cases Lockheed Martin listed in its motion — are already being coordinated under the *Alumina Dust Claims* master case per Judge Ross's June 5, 2009 Case Management Order. That order may need

to be revised given the amount of time that has passed. *Cf. Mitchell*, 67 V.I. at 276 (noting that the parties in the *Alumina Dust Cases* may have suspended discovery on their own). But setting it aside and ordering that the same set of cases — initially grouped together under *LaBast* and then under *Alumina Dust Claims* — be consolidated instead under *Ayala* or under the miscellaneous caption "*In re: Carmelo Ayala, et al.*" (Def.'s Mot. 6 (caption of proposed order)), would only cause more confusion and delay. Second, there is no reason now, nor was there on November 29, 2012 when Lockheed Martin filed this motion, to consolidate *Ayala* and the other eighteen cases together for the "filing . . . of both dispositive and non-dispositive motions." *Id.* at 2. Dispositive motions had already been filed by Lockheed Martin in each of the individual cases and non-dispositive motions — relating to two or more individual cases — could have been (and still can be) filed under the *Alumina Dust Claims* master case. (*Cf.* Stip. Case Mgmt. Order ¶ 2, entered June 5, 2009, *In re: Alumina Dust Claims*, SX-09-MC-031 ("Any orders, pleadings, *motions* or other filed documents which apply to more than one case shall be filed under the *In re: Alumina Dust Claims* caption and shall designate immediately under the caption the cases to which it applies. Orders, pleadings, *motions* and other filed documents which pertain to only one case shall be filed in that case only." (emphasis added)).) Consolidating the cases together for pretrial purposes and for filing motions is pointless at this point and for this reason Lockheed Martin's motion must be denied.

 Nonetheless, the Court will grant Lockheed Martin's motion on another ground. Lockheed Martin's motion indirectly brings to light that the *Alumina Dust Claims* cases are not consolidated at present. That is, no order has ever issued formally consolidating the *Alumina Dust* cases under *LaBast* or any other case, including the master case. Consolidation must be ordered not implied. *Cf. Richie v. Ranchlander Nat'l Bank*, 724 S.W.2d 851, 853 (Tex. Ct. App. 1986) ("The trial court here did not expressly order that the two causes be consolidated, and appellants have cited no authority for the proposition that such an order may be made by implication."); *Davenport v. Marcon of Kan., Inc.*, 344 P.3d 397, 2015 Kan. App. Unpub. LEXIS 155, at *17 (Ct. App. Mar. 6, 2015) ("[T]he claims were consolidated explicitly only for pretrial purposes. There was never an order of consolidation for all purposes, and we are not prepared to imply one into existence."). However, both the Court and counsel have proceeded as if these cases were, in fact, consolidated since the June 5,

2009 Case Management Order was issued. For example, Ayala's April 4, 2011 motion for reconsideration explained that his case "was *consolidated* for Discovery purposes together with 21 similar cases by Order of Superior Court Judge, Edgar Ross on June 9th 2009, under the caption, *In re: Alumina Dust Claims.*" *Alumina Dust Claims*, 67 V.I. at 180 (emphasis and italics added) (ellipsis and citation omitted)); *see also id.* at 183 (quoting a notice Lockheed Martin filed in the Alumina Dust Claims master case) ("Lockheed advances the *Lone Pine* CMO to streamline discovery. In this *consolidated* series of cases, the Court is faced with thirteen plaintiffs alleging that exposure to bauxite, alumina dust and asbestos fibers resulted in the development of pneumoconiosis." (emphasis added) (quotation marks and citation omitted))); *accord Mitchell*, 67 V.I. at 288 ("To allow *Mitchell* to remain *consolidated* under the *Alumina Dust* master case will only result in further delay." (emphasis added)). In this instance, and notwithstanding the broad strokes Lockheed Martin paints with, in its motion, what Lockheed Martin seeks here is not really consolidation for trial, but rather consolidation "for . . . consideration of . . . dispositive . . . motions." (Def.'s Mot. at 3.)

 In some instances it may be appropriate, even necessary, to consolidate or coordinate "several actions" together "while one is tried, and the judgment in the case tried will be conclusive as to the others." *In re: Cases Removed*, 2016 V.I. LEXIS 154, at *27 n.17 (quotation marks and citation omitted). *Cf. In re: Jt E. & So. Dists. Asbestos Litig.*, 769 F. Supp. 85, 87 (E.D.N.Y. 1991) ("Consolidations have become increasingly common as the courts struggle to meet the challenges posed by the asbestos litigation crises."). But consolidating cases together to resolve dispositive motions may not be proper if the facts in dispute differ among the individual cases. When cases truly "involve a common question of law or fact," courts may consolidate the cases or "issue any other orders to avoid unnecessary cost or delay." FED. R. CIV. P. 42(a). This, in essence, is what Lockheed Martin is seeking, not to have the cases consolidated for trial, but rather to have one of the cases designated as the lead case to "allow for a *consistent* decision to be made, without the prospect for *inconsistent* rulings." (Def.'s Mot. 3 (emphasis added)).

As with consolidation, even though it was never ordered, the parties have also proceeded as though *LaBast* was the lead case, even though no order has ever designated it as a lead case. *Cf. Alumina Dust Claims*, 67 V.I. at 180-181 ("Lockheed Martin filed on November 22, 2010 a Summary

Judgment motion in the *lead consolidated case* of *Erwin LaBast v. Lockheed Martin, et al.* The Motion effects [sic] all of the consolidated cases because Lockheed Martin argues that the Virgin Islands Workmen's Compensation Act bars Erwin LaBast and by inference each of the other 21 consolidated cases from filing a law suit against it." (italics added) (brackets, ellipses, and citation omitted))). If *LaBast* had been designated as the lead case, *Ayala* and the other cases under the *Alumina Dust Claims* master case would have been stayed, either until certain motions were resolved or until the entire case concluded. *See Manual for Complex Litigation* § 10.123 ("Another coordination method is to designate a 'lead' case in the litigation; rulings in the lead case would presumptively apply to the other coordinated cases, and the judges in those cases *may stay pretrial proceedings in those cases pending resolution* of the lead case." (emphasis added)). But the individual cases are not stayed, which is why Lockheed Martin was able to file a motion in this case.

 Lockheed Martin is correct in so far as designating one case to serve as a lead case can avoid inconsistent rulings on dispositive motions and "streamline and economize pretrial proceedings so as to avoid duplication of effort, and to prevent conflicting outcomes in cases involving similar legal and factual issues." (Def.'s Mot. 2 (quotation marks and citations omitted).) Designating one of the *Alumina Dust Claims* cases to serve as the lead case would allow the Court to economize its efforts on Lockheed Martin's July 15, 2011 summary judgment motions. But consolidation is unnecessary at this point as the individual cases are being coordinated under a master case. Nevertheless, Lockheed Martin expressly requested "such other and further relief as to this court shall appear just." *Id.* at 3. Accordingly, since Ayala and the other plaintiffs, all represented by the same attorney, have not objected, nor any of the other persons Lockheed Martin served, the Court finds it proper to grant Lockheed Martin's motion in part. Because the summary judgment motions in the *Alumina Dust Claims* cases are nearly identical, the Court will designate *Ayala* as the lead case and construe the motion papers filed in this case as the master motion papers to expedite a ruling on Lockheed Martin's summary judgment motions and avoid inconsistent decisions.

## C. Attorney Misconduct

In reviewing Lockheed Martin's Motion to Consolidate, the Court discovered that the motion plagiarizes substantial portions of an order

310

Judge Finch issued in *St. Croix Federation of Teachers*. Lockheed Martin's motion totals five pages, excluding a proposed order. The last page is the certificate of service and is followed by a list of the proposed cases for consolidation. That leaves three pages. Excluding the caption, footnotes, and headers, there are approximately 550 words on the three pages. Of the 550 words, approximately 290 were taken entirely from Judge Finch's order. *Compare, e.g.*, Def's Mot. 2-3, *with St. Croix Fed'n of Teachers*, 2011 U.S. Dist. LEXIS 82358, at *4:

| | |
|---|---|
| "The similarity of the legal claims supports consolidation. *See Salem Steel North America, LLC v. Shanghai Shangshang Stainless Steel Pipe Co., Ltd.*, 2009 WL 2169243, at *2 (D.N.J. 2009) (finding consolidation appropriate because the two cases alleged similar causes of action). Resolution of each case is likely to depend on the same facts, evidence, and witnesses and require the same legal analysis. *Pay Tel Systems, Inc. v. Seiscor Technologies, Inc.*, 2009 WL 2169243, at *2 (S.D.N.Y. 1996) (consolidating cases for trial under Rule 42(a) because "[b]oth cases involve similar legal theories . . . Many of the fact witnesses also will be the same for both cases. And many of the documents to be offered into evidence will be the same for both cases."). Furthermore, the Plaintiffs in these cases have filed similar oppositions to the pending dispositive motions filed by Lockheed Martin. *See St. Croix Federation of Teachers v. Government of the Virgin Islands*, 2009 WL 2169243, at *2 (D.V.I. 2011)." | "The similarity of the legal claims supports consolidation. *See Salem Steel North America, LLC v. Shanghai Shangshang Stainless Steel Pipe Co., Ltd.*, 2009 U.S. Dist. LEXIS 62348, *5, [WL], at *2 (D.N.J. 2009) (finding consolidation appropriate because the two cases alleged similar causes of action). Resolution of each case is likely to depend on the same facts, evidence, and witnesses and require the same legal analysis of the VIESA. *Pay Tel Systems, Inc. v. Seiscor Technologies, Inc.*, 1996 U.S. Dist. LEXIS 1663, *3, [WL], at *1 (S.D.N.Y. 1996) (consolidating cases for trial under Rule 42(a) because "[b]oth cases involve similar legal theories . . . Many of the fact witnesses also will be the same for both cases. And many of the documents to be offered into evidence will be the same for both cases."). Furthermore, the plaintiffs in each case have filed similar motions for a temporary restraining order and preliminary injunction to block imposition of VIESA's 8% pay reduction." |

311

Excluding the citations to LexisNexis in the version of the order quoted above, which LexisNexis presumably added given the references to "WL" in brackets followed by different page numbers, and excluding the references to VIESA, which the District Court used as an abbreviation for the Virgin Islands Economic Stability Act of 2011, the texts quoted above are nearly word-for-word the same. The authority cited in each is the same. The parenthetical explanations of the holdings of the cases cited in each are same as well as the language quoted parenthetically. In fact, the changes and additions to the quotations are the same in each. Furthermore, in addition to the language quoted above, the entire second paragraph of page two of Lockheed Martin's motion was also taken verbatim from *St. Croix Federation of Teachers*. Lastly, the removal of the references to VIESA — specifically, for example, the language "of the VIESA" at the end of the sentence that begins "[r]esolution of each case is likely to depend on the same facts, evidence, and witnesses and require the same legal analysis," (Def.'s Mot. 2) — shows that order was not copied and pasted accidentally from Judge Finch's order. If so, the references to VIESA — at least within this one sentence — would have remained. Instead, the deletions were intended either to tailor the language to the facts of *Ayala* and the *Alumina Dust* cases, or to remove any reference to the facts at issue in *St. Croix Federation of Teachers*, or both. Yet, notwithstanding such wholesale plagiarism, counsel at least included a citation to *St. Croix Federation of Teachers*, which is also what ultimately resulted in the Court discovering the problem.

 "While our legal system stands upon the building blocks of precedent, necessitating some amount of quotation or paraphrasing, citation to authority is absolutely required when language is borrowed." *United States v. Bowen*, 194 Fed. Appx. 393, 402 n.3 (6th Cir. 2006). For this reason, courts around the country resoundingly denounce plagiarism whether occasioned by counsel in their papers or even judges in their opinions. *See, e.g., United States v. Lavanture*, 74 Fed. Appx. 221, 223 n.2 (3d Cir. 2003) ("[I]t is certainly misleading and quite possibly plagiarism to quote at length a judicial opinion (or, for that matter, any source) without clear attribution."); *Pagan Velez v. Laboy Alvarado*, 145 F. Supp. 2d 146, 160 (D.P.R. 2001) ("[C]ounsel for Plaintiff, Jose Ramon Olmo Rodriguez, filed an opposition to the summary judgement motion which plagiarizes full pages of *Ortiz v. Colon*, No. 96-1153, slip op. at 2-7 (D.P.R. Feb. 11, 2000). We found not a single citation to *Ortiz*, but did notice adjustments

312

in the appropriate places which were commensurate with the facts of Plaintiff's case. In fact, by our estimation, approximately sixty-six percent of the brief is a verbatim reproduction of the Judge Casellas' Opinion and Order. This behavior is reprehensible." (internal citations omitted)); *Denton v. Rievley*, 1:07-cv-211, 2008 U.S. Dist. LEXIS 92526, at *6 n.2 (E.D. Tenn. Nov. 12, 2008) ("Counsel's assertion that large amounts of text can be copied without attribution is incorrect."); *aff'd on other grounds*, 353 Fed. Appx. 1 (6th Cir. 2009); *Venesevich v. Leonard*, Civ. No. 1:07-cv-2118, 2008 U.S. Dist. LEXIS 102865, at *6-7 n.2 (M.D. Pa. Dec. 19, 2008) ("The court is both disappointed and disturbed to conclude that plaintiff's attorney . . . has plagiarized a significant portion of plaintiff's brief . . . . Indeed, none of the legal research contained in . . . [counsel's] brief appears to be his own work product, yet he has not quoted or cited any of these cases for the content reproduced from them. The federal bench has denounced such mass appropriation as improper, 'completely unacceptable,' and 'reprehensible.' " (quoting *Bowen*, 194 Fed. Appx. at 402 n.3 and *Pagan Velez*, 145 F. Supp. 2d at 160) (paragraph break and other citations omitted)); *Rankin v. State*, 953 S.W.2d 740, 746 n.4 (Tenn. Crim. Ct. App. 1996) (Baird, J., dissenting) ("Clearly, the majority did not engage in any independent research or analysis of this issue. The majority opinion is nothing more than a restatement of the dissent in the Court of Appeals. However, the dissent is not cited in the majority opinion. Such plagiarism is shameful and serves only to embarrass this Court." (internal citations omitted)); *cf. Nat'l Labor Relations Bd. v. Botany Worsted Mills, Inc.*, 106 F.2d 263, 266 (3d Cir. 1939) (denying request for interrogatories to administrative board members) ("We feel that the inquiry into the mechanics of opinion-writing is ethical rather than legal. The standard that frowns upon plagiarism, or, if commercialized, forbids it, applies to all writing and not only to the literary efforts of judicial officers.").[7]

---

[7] In fact, when courts do borrow language from another source, either to avoid repetition or to show appreciation for someone else's work, they often admit outright that they are plagiarizing, even if only in a tongue-in-cheek fashion. *See, e.g., Lockett v. State*, 517 So. 2d 1317, 1341 (Miss. 1987) (Robertson, J., dissenting) ("I said what should here be said as well as I can say it, in my separate opinion in *McCommon*, 467 So. 2d at 944-45, in which Justice Dan M. Lee and Justice Sullivan joined. A part of that opinion I now plagiarize."), *overruled on other grounds, Jones v. State*, 700 So. 2d 631, 633 (Miss. 1997); *United States v. Gillespie*, 666 F. Supp. 1137, 1139 (N.D. Ill. 1987) ("Both because *Lytle* is not yet published and to make this opinion self-contained, this Court will plagiarize freely from its own *Lytle* opin-

Imitation may be the highest form of flattery, but plagiarism is no compliment because "[t]he essence of plagiarism is deceit." *In re: Lamberis*, 93 Ill. 2d 222, 443 N.E.2d 549, 552, 66 Ill. Dec. 623 (1982). In this instance, however, what is more troubling, beyond simply copying and pasting someone else's research, is that counsel also copied and pasted someone else's reasoning. Judge Finch reasoned that consolidation was proper in *St. Croix Federation of Teachers* because both cases likely depended on the same facts, the same evidence, and the same witnesses and would also require analysis of the same law. The same might be true of the *Alumina Dust* cases. But if counsel did reach the same conclusion as Judge Finch — that consolidating these cases would "reduce unnecessary duplication, conserve judicial (and the litigants') resources, and promote their efficient resolution," *St. Croix Fed'n of Teachers*, 2011 U.S. Dist. LEXIS 82358, at *5 (citations omitted)) — then counsel should have conveyed that sentiment in his own words. Written motions in which the authority cited and the conclusions drawn do not support the relief requested serve no purpose to clients, courts, or counsel. *Cf. Pagan Velez*, 145 F. Supp. 2d at 161 ("In addition to the self-evident reasons for denouncing this practice, the impugnable brief was a disservice to Plaintiff, counsel's client, and this court, as it did not fully address all the arguments raised in Defendants' motion for summary judgement."); *Torres Alamo v. Puerto Rico*, Civ. No. 05-1955, 2006 U.S. Dist. LEXIS 40740, at *10 (D.P.R. 2001) ("By plagiarizing . . . [counsel] has bucked his duty to develop pointed arguments before this court on his client's behalf."), *aff'd and rev'd in part on other grounds*, 502 F.3d 20 (1st Cir. 2007).

 Nevertheless, counsel's failure to ascribe the proper attribution to Judge Finch's order does not rise to the level of a violation of the rules and standards governing the practice of law. However, to ignore such conduct would also be to sanction it. Researching and addressing counsel's plagiarism has caused the Court to expend precious resources unnecessarily. The Court is mindful that counsel may not have drafted this motion. That is very possible. But counsel signed the motion, and by signing and filing papers with the court, attorneys implicitly represent that

---

ion."); *William S. v. Gill*, 98 F.R.D. 463, 466 n.5 (N.D. Ill. 1983) ("In describing William's plight this Court has plagiarized freely from its own earlier opinion that summarized the Complaint's well-pleaded allegations at length." (citing *William S. v. Gill*, 536 F. Supp. 505, 507-09 (N.D. Ill. 1982))).

their papers are proper. *See* SUPER. CT. R. 29 ("[S]igning and verification of pleadings and other papers" is governed by "Rules 10 and 11 of the Federal Rules of Civil Procedure."). Such behavior will not be tolerated and appropriate sanctions will issue should further lapses in judgment occur. *Accord Pagan Velez*, 145 F. Supp. 2d at 161 ("In the future, we expect counsel to maintain the highest standards of integrity in all of his representations with this court. We will not treat so gingerly further lapses in his judgement.").

## CONCLUSION

For the reasons stated above, the Court will grant in part and deny in part Lockheed Martin's motion, notwithstanding the failure to serve all of the parties in this case. Failure to serve GEC is harmless here because GEC has been dismissed by all but two of the plaintiffs. The two cases in which GEC is still a party, GEC has not appeared in one and may have been dismissed in the other. In addition, the other parties — Ayala (and by extension all of the other plaintiffs who are represented by the same attorney) as well as St. Croix Alumina and Glencore, companies named as defendants in other cases but not in this case — who were served did not respond. Considering the merits of Lockheed Martin's motion, the Court must deny the request to consolidate *Ayala* and the other *Alumina Dust Claims* cases for pretrial discovery or motion practice because the same cases are already being coordinated under a master case and are subject to a common case management order, even though they have never been consolidated, technically. Yet, what Lockheed Martin seeks here is not consolidation *per se* but rather the designation of a lead case. In this sense, Lockheed Martin's concern regarding avoiding inconsistency and increasing efficiency as to those motions already pending is appropriate. Accordingly, the Court will grant Lockheed Martin's motion and designate *Ayala* as the lead case, but for the limited purpose of designating the motion papers in *Ayala* as the master motion papers for all of the pending summary judgment motions. Finally, although the motion Lockheed Martin filed plagiarized language from *St. Croix Federation of Teachers*, the Court will excuse counsel's misconduct in this instance, trusting that it will not happen again. An order consistent with this memorandum opinion follows.