IN THE SUPERIOR COURT
OF THE VIRGIN ISLANDS



**FILED**

April 26, 2020

TAMARA CHARLES
CLERK OF THE COURT

**SUPERIOR COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. CROIX**

| | |
|---|---|
| IN RE: DECEASED PLAINTIFFS.[1] | ) |
| | ) |
| | ) |
| | ) |
| JOHN BARBELL, | ) CASE NO. SX-06-CV-198 |
| | ) |
| Plaintiff, | ) COMPLEX LITIGATION DIVISION |
| | ) |
| v. | ) * * * |
| | ) |
| AMERADA HESS CORPORATION; HESS OIL | ) Coordinated Under: *In re: Refinery* |
| VIRGIN ISLANDS CORPORATION; LITWIN | ) *Worker Toxic Tort Litigation*, Master |
| CORPORATION; and UNIVERSAL OIL | ) Case No. SX-15-CV-198 |
| PRODUCTS also known as U.O.P., | ) |
| | ) |
| Defendants. | ) |
| | ) |
| THE LITWIN CORPORATION, | ) |
| | ) |
| Third-Party | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| SHELL OIL COMPANY; RIGGERS & ERECTORS | ) |
| INTERNATIONAL, INC.; COMMUNICATION | ) |
| SYSTEMS & MAINTENANCE CORPORATION; | ) |
| VIRGIN ISLANDS INDUSTRIAL MAINTENANCE | ) |
| CORPORATION; CHICAGO BRDIGE & IRON | ) |
| COMPANY, N.V., individually and as successor- | ) |
| in-interest to CHICAGO BRIDGE & IRON; and | ) |
| A.P. GREEN SERVICES, INC., individually and as | ) |
| successor-in-interest to BIGELOW-LIPTAK | ) |
| CORPORATION, | ) |
| | ) |
| Third-Party | ) |
| Defendants. | ) |
| | ) |

---

[1] Because several cases present the same issue—death of a plaintiff—the Court has grouped the cases together under a generic caption to save judicial resources and issue one decision. *Accord In re: Cases Removed to the Dist. Ct. of the V.I.*, SX-98-CV-109, *et seq.*, 2016 V.I. LEXIS 154, *2 n.1 (V.I. Super. Ct. Sep. 21, 2016).

| | |
|---|---|
| JAMES HUGHES, | ) CASE NO. SX-06-CV-221 |
| | ) |
| Plaintiff, | ) COMPLEX LITIGATION DIVISION |
| | ) |
| v. | ) *** |
| | ) |
| AMERADA HESS CORPORATION; HESS OIL VIRGIN ISLANDS CORPORATION; LITWIN CORPORATION; and UNIVERSAL OIL PRODUCTS also known as U.O.P., | ) Coordinated Under: *In re: Refinery Worker Toxic Tort Litigation*, Master Case No. SX-15-CV-198 |
| | ) |
| Defendants. | ) |
| | ) |
| THE LITWIN CORPORATION, | ) |
| | ) |
| Third-Party Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| SHELL OIL COMPANY; RIGGERS & ERECTORS INTERNATIONAL, INC.; COMMUNICATION SYSTEMS & MAINTENANCE CORPORATION; VIRGIN ISLANDS INDUSTRIAL MAINTENANCE CORPORATION; CHICAGO BRDIGE & IRON COMPANY, N.V., individually and as successor-in-interest to CHICAGO BRIDGE & IRON; and A.P. GREEN SERVICES, INC., individually and as successor-in-interest to BIGELOW-LIPTAK CORPORATION, | ) |
| | ) |
| Third-Party Defendants. | ) |
| | ) |
| ARNIM METIVIER, | ) CASE NO. SX-08-CV-056 |
| | ) |
| Plaintiff, | ) COMPLEX LITIGATION DIVISION |
| | ) |
| v. | ) *** |
| | ) |
| LOCKHEED MARTIN CORPORATION, individually and as successor-in-interest to | ) Coordinated Under: *In re: Alumina Dust Claims*, Master Case No. SX-09- |

*In re: Deceased Plaintiffs*
Case Nos. SX-06-CV-198, -221; SX-08-CV-056, 227, -229, -273, -295; SX-11-CV-244
MEMORANDUM OPINION
Page 3 of 33

2020 VI Super 53

| | |
|---|---|
| MARTIN MARIETTA CORPORATION, MARTIN MARIETTA ALUMINUM, INC., & MARTIN MARIETTA ALUMINUM PROPERTIES, INC.; MARTIN MARIETTA CORPORATION, individually and as successor-in-interest to MARTIN MARIETTA ALUMINUM, INC. & MARTIN MARIETTA ALUMINUM PROPERTIES, INC.; and GENERAL ENGINEERING CORPORATION,<br><br>           Defendants. | MC-031 |
| VISHNU SUBNAIK,<br><br>           Plaintiff,<br><br>v.<br><br>HESS OIL VIRGIN ISLANDS CORPORATION; AMERADA HESS CORPORATION; UOP, LLC; SHELL OIL CORPORATION; and JOHN CRANE PACKING COMPANY,<br><br>           Defendants. | CASE NO. SX-08-CV-227<br><br>COMPLEX LITIGATION DIVISION<br><br>* * *<br><br>Coordinated Under: *In re: Refinery Worker Toxic Tort Litigation*, Master Case No. SX-15-CV-198 |
| HENRY HAZELL,<br><br>           Plaintiff,<br><br>v.<br><br>HESS OIL VIRGIN ISLANDS CORPORATION; AMERADA HESS CORPORATION; UOP, LLC; SHELL OIL CORPORATION; and JOHN CRANE PACKING COMPANY,<br><br>           Defendants. | CASE NO. SX-2008-CV-229<br><br>COMPLEX LITIGATION DIVISION<br><br>* * *<br><br>Coordinated Under: *In re: Refinery Worker Toxic Tort Litigation*, Master Case No. SX-15-CV-198 |
| FRANKIE MILLER,<br><br>           Plaintiff, | CASE NO. SX-08-CV-273<br><br>COMPLEX LITIGATION DIVISION |

|  |  |
|---|---|
| v. | * * * |
| AMERADA HESS CORPORATION; HESS OIL VIRGIN ISLANDS CORPORATION; UNIVERSAL OIL PRODUCTS also known as U.O.P.; and INGERSOL RAND CORPORATION, | Coordinated Under: *In re: Refinery Worker Toxic Tort Litigation*, Master Case No. SX-2015-CV-198 |
| Defendants. | |
| SAMUEL PRIME, | CASE NO. SX-08-CV-295 |
| Plaintiff, | COMPLEX LITIGATION DIVISION |
| v. | * * * |
| LOCKHEED MARTIN CORPORATION, individually and as successor-in-interest to MARTIN MARIETTA CORPORATION, MARTIN MARIETTA ALUMINUM, INC., & MARTIN MARIETTA ALUMINUM PROPERTIES, INC.; MARTIN MARIETTA CORPORATION, individually and as successor-in-interest to MARTIN MARIETTA ALUMINUM, INC. & MARTIN MARIETTA ALUMINUM PROPERTIES, INC.; and GENERAL ENGINEERING CORPORATION, | Coordinated Under: *In re: Alumina Dust Claims*, Master Case No. SX-09-MC-031 |
| Defendants. | |
| JOHN A. WEEKES, | CASE NO. SX-11-CV-244 |
| Plaintiff, | COMPLEX LITIGATION DIVISION |
| v. | * * * |
| LOCKHEED MARTIN CORPORATION, individually and as successor to MARTIN MARIETTA CORPORATION; MARTIN MARIETTA CORPORATION; MARTIN MARIETTA ALUMINUM, INC. now known as ALERIS ROLLED PRODUCTS, LLC or as LEWISPORT, LLC; ALERIS ROLLED PRODUCTS, | Coordinated Under: *In re: Bauxite Containing Silica Halliday Litigation Series*, Master Case No. SX-2015-CV-097 |

LLC; GENERAL ENGINEERING CORPORATION;   )
GLENCORE, LTD f/k/a CLARENDON, LTD;   )
TANG HOW BROTHERS, INC.; and ZENON   )
CONSTRUCTION COMPANY,   )
   )
              **Defendants.**   )
   )

Cite as: 2020 VI Super 53

**Appearances:**

**THOMAS ALKON, ESQ.**
Law Offices of Thomas Alkon, P.C.
Christiansted, VI 00820
*For all Plaintiffs*

**JERRY HUDSON EVANS, ESQ.**
Richardson, Patrick, Westbrook & Brickman LLC
Mt. Pleasant, SC 29465
*For all Refinery Worker Plaintiffs*

**J. RUSSELL B. PATE, ESQ.**
The Pate Law Firm
St. Thomas, VI 00804
*For all Plaintiffs*

**KOREY A. NELSON, ESQ.**
Burns Charest LLP
New Orleans, LA 70130
*For all Plaintiffs*

**WARREN T. BURNS, ESQ.**
**DANIEL H. CHAREST, ESQ**
Burns Charest LLP
Dallas, TX 75202
*For all Plaintiffs*

**CARL A. BECKSTEDT, III, ESQ.**
Beckstedt & Associates
Christiansted, VI 00820
*For Hess Oil Virgin Islands Corporation and Amerada Hess Corporation*

**W. MARK WILCZYNSKI, ESQ.**

*In re: Deceased Plaintiffs*
Case Nos. SX-06-CV-198, -221; SX-08-CV-056, 227, -229, -273, -295; SX-11-CV-244
**MEMORANDUM OPINION**
Page 6 of 33

2020 VI Super 53

Law Office of W. Mark Wilczynkski, P.C.
St. Thomas, VI 00804
*For Litwin Corporation and John Crane Packing Company*

**JAMES L. HYMES, III**
Law Office of James L. Hymes, P.C.
St. Thomas, VI 00802
*For Litwin Corporation*

**KEVIN A. RAMES, ESQ.**
**SEMAJ I. JOHNSON, ESQ.**
Law Office of Kevin A. Rames, P.C.
Christiansted, VI 00822
*For Lockheed Martin Corporation and Shell Oil Company*

**MICHAEL J. SANFORD, ESQ.**
**RYAN J. STUZMAN, ESQ.**
Sanford, Amerling & Associates
Christiansted, VI 00820
*For Riggers & Erectors International, Inc. and Virgin Islands Industrial Maintenance Corporation*

**RICHARD H. HUNTER, ESQ.**
Hunter & Cole
Christiansted, VI 00820
*For UOP, LLC and Glencore, Ltd.*

**MARK D. HODGE, ESQ.**
Hodge & Hodge
St. Thomas, VI 00802
*For Chicago Bridge & Iron, N. V.*

**EUGENIO W.A. GÉIGEL-SIMOUNET, ESQ.**
GS Law Offices P.C.
Gallows Bay, VI 00824
*For General Engineering Corporation*

**MEMORANDUM OPINION**

**MOLLOY,** *Judge.*

¶1    **IN EACH CASE** listed above in the caption, the plaintiff (or first-party plaintiff) passed away while his lawsuit was pending. In five cases—*Hughes, Metivier, Prime, Subnaik,* and *Weekes*—untimely motions were filed to substitute a personal representative and continue the lawsuit as a

survival action. The motions are opposed in all five cases. The motion to substitute *Hazell* was filed timely but remains unserved five years later. In the remaining cases—*Barbell* and *Miller*—no motion has been filed but the plaintiff's death is a matter of record. Because all eight cases raise variations on the same legal issue, the Court has grouped them together under a common caption to issue one Opinion. For the reasons stated below, the Court reaffirms "that section 78 of title 5 of the Virgin Islands Code, which governs substitution upon the death of a party, is akin to a statute of limitations." *Martinez v. Hess Oil V.I. Corp.*, 69 V.I. 519, 524 (Super. Ct. 2018). And "because the statute of limitations is an affirmative defense, it must be asserted at the earliest opportunity." *Id.* at 547 (citing *Rennie v. Hess Oil V.I. Corp.*, 62 V.I. 529, 536 (2015)). Failure to timely substitute was raised at the earliest opportunity in *Hughes, Metivier, Prime, Subnaik,* and *Weekes* Although the substitution was timely in *Hazell*, the motion was not served. In the remaining cases, *Barbell* and *Miller*, the Court will take judicial notice of the plaintiff's death and dismiss both cases *sua sponte* for failure to file a motion to substitute a personal representative.

## I.    FACTUAL AND PROCEDURAL BACKGROUND[2]

### A.  *Barbell v. Amerada Hess Corporation, et al.*

¶2    On March 14, 2006, John Barbell ("Barbell") filed a complaint against Amerada Hess Corporation ("Hess"), its wholly-owned subsidiary Hess Oil Virgin Islands Corporation ("HOVIC") (collectively "Hess Defendants"), Litwin Corporation ("Litwin"), and Universal Oil Products ("UOP") for damages allegedly for exposing him to "asbestos and asbestos-containing products" as well as "ethylene oxide" and other "industrial solvents." (Compl. ¶¶ 8, 9.) Litwin appeared, filed an answer denying liability, crossclaimed against UOP, and filed a third-party complaint, as amended, against Shell Oil Company ("Shell"), Riggers & Erectors International, Inc. ("Riggers"), Communication Systems & Maintenance Corporation ("CSMC"), Virgin Islands Industrial Maintenance Corporation ("IMC"), Chicago Bridge & Iron Company, N.V. ("CBI"),[3] and A.P. Green Services, Inc. ("A.P. Green"), individually and as successor to Bigelow-Liptak Corporation. The Hess Defendants and UOP answered the complaint and UOP crossclaimed against Litwin. CBI, Shell, Riggers, and IMC also

---

[2] Although the cases are similar, several being coordinated under the same master case, the factual and procedural backgrounds relevant to this Opinion are different. For this reason, each case is summarized individually.

[3] CBI was also sued as successor-in-interest to Chicago Bridge & Iron.

answered the third-party complaint and everyone except Shell counterclaimed against Litwin. CSMC and A.P. Green never appeared.

¶3      Barbell later stipulated with UOP to dismiss his claims with prejudice, which the Court approved on December 4, 2009. UOP's crossclaim against Litwin remained, however. Barbell's case was grouped with 59 other cases and eventually assigned to the same judge who coordinated all the cases under a master case titled *In re: Refinery Worker Toxic Tort Litigation. See generally William v. Amerada Hess Corp.*, 66 V.I. 23, 34-35 (Super. Ct. 2017) (summarizing the same history). Several months before the master case was opened, Barbell's counsel, Thomas Alkon, Esq. ("Attorney Alkon") filed a motion on February 19, 2015, asking to be relieved as counsel. Attorney Alkon explained that he lost contact with Barbell "[a]fter Hovensa closed in 2012 . . . ." (Pl.'s Mot. to be Relieved as Counsel 1, filed Feb. 19, 2015.) Attorney Alkon sent letters by registered mail to Barbell's last known address, which were returned, tried Barbell's telephone number but found it disconnected, and hired an investigator—all to no avail. Attorney Alkon concluded that he could "no longer faithfully represent [Barbell's] legal interest." *Id.* None of the Defendants or Third-Party Defendants responded.

¶4      However, several months after the Refinery Worker master case was opened, the Hess Defendants filed a motion to dismiss Barbell's case for failure to prosecute. The only remaining first-party defendant, Litwin, did not join. Attorney Alkon filed a joint response on behalf of *Barbell* and other *Refinery Worker* plaintiffs who were the targets of identical failure to prosecute motions filed by Hess and HOVIC, reiterating that he was no longer in contact with Barbell and therefore "cannot join in the motion to [d]ismiss." (Pl.'s Rep. to Def.'s Mot. to Dismiss for Lack of Prosecution 4, filed Dec. 8, 2015). "However as an officer of the court," Attorney Alkon stated that he "can't disagree that there has been a lack of responses and . . . again request[ed] that [he] be relieved as counsel . . . ." *Id.*

¶5      On November 6, 2016, Litwin filed a stipulation signed by counsel for the parties, including Attorney Alkon, to dismiss its crossclaim against UOP and its third-party claims against CBI, Riggers, and IMC. And on December 20, 2017, Litwin and Shell filed a stipulation, signed only by them, to dismiss Litwin's third-party claims against Shell, which this Court approved on September 17, 2019. In a separate order entered the same day, the Court dismissed CSMC and A.P. Green for failure to timely serve.

¶6    On June 5, 2018, Rhea Lawrence, Esq. with Lee J. Rohn and Associates, LLC filed an emergency petition with the Superior Court to have Maxima Barbell ("Maxima") appointed as personal representative of Barbell's estate. In the petition, Maxima explained that her father was a member of a putative class action pending in the Superior Court, *Diane Cornwall, et al. v. Virgin Islands Industrial Maintenance Corporation, et al.*, Case No. SX-02-CV-641, which had been stayed because one of the defendants, HOVENSA, LLC, had filed for bankruptcy. The bankruptcy court had imposed certain deadlines on the claimants. Because her father had passed away, Maxima asked to be appointed as personal representative to continue his *Cornwall* claim. The petition was not served on anyone and did not reference Barbell's *Refinery Worker* case. It did include a copy of a Florida death certificate, however, showing that Barbell had passed away on November 10, 2010. A Superior Court magistrate judge granted the petition on June 8, 2018. To date, probate proceedings have not commenced for the Estate of John Barbell.

¶7    During an October 16, 2019 status conference in the *Refinery Worker* cases, the Court advised Barbell's attorney that the reason he could not locate Barbell was "because he passed away in 2010." (Hr'g Tr. 42:9 (Oct. 16, 2019), *In re: Refinery Worker Toxic Tort Litig.*, SX-15-CV-198 (hereinafter "*Refinery Worker* Tr.").) Counsel questioned whether Barbell's death was "in the record . . . ." *Id.* at 42:10. The Court referred him to the *ex parte* petition Maxima filed. To date, no motion to substitute Maxima or anyone else as personal representative for the Estate of John Barbell has been filed in this case.

## B.   *Hughes v. Amerada Hess Corporation, et al.*

¶8    The factual and procedural background of *Hughes* is identical to that of *Barbell*. Hughes sued the Hess Defendants, UOP, as well as Litwin and Litwin then impleaded Shell, Riggers, CSMC, IMC, CBI, and A.P. Green. Shell, Riggers, and IMC counterclaimed against Litwin and Litwin and UOP crossclaimed against each other. Hughes stipulated with UOP to dismiss his claims with prejudice, which was approved on December 7, 2011, leaving the UOP-Litwin crossclaims pending. *Hughes* differs from *Barbell* in one respect: Hughes' wife, Lynette Hughes ("Lynette"), through Attorney Alkon, filed a petition on October 16, 2013, to be appointed personal representative of her husband. Lynette attached to the petition a copy of New York death certificate for Hughes, which states that he passed away on October 1, 2011. Counsel neglected to sign the October 16, 2013 petition,

however. So, a signed version was filed on November 17, 2014, and granted by a Superior Court magistrate judge shortly thereafter, on November 24, 2014.

¶9     Notwithstanding that neither the petition nor the order of appointment referenced Hughes' *Refinery Worker* case, the Hess Defendants, on April 24, 2015, filed a motion to dismiss for failure to substitute. The Hess Defendants attached to their motion copies of the complaint, the death certificate, Lynette's petition, and the order of appointment. Approximately three weeks later, on May 14, 2015, Lynette filed a motion for substitution and a response in opposition to the dismissal motion. *Hughes* was later grouped under *Refinery Worker* and Lynette filed a notice on December 2, 2016, to alert the Court to recent decisions rendered by other Superior Court judges, which she thought were persuasive. Lynette then filed a renewed motion to substitute on February 13, 2018, after the Virgin Islands Rules of Civil Procedure took effect on March 31, 2017. By Order dated and entered September 18, 2019, the Court rejected several stipulated dismissals purportedly filed by Attorney Alkon because Lynette had not—at the time the stipulations were filed—moved or been granted leave to substitute. The Court construed other stipulated dismissal Lynette joined as motions and granted them. The Court heard argument in *Hughes* on October 16, 2019, on substitution, and took her motion under advisement. Litwin later filed a stipulation on January 24, 2020, to dismiss with prejudice its third-party claims against Shell.

### C.  *Metivier v. Lockheed Martin Corporation, et al.*

¶10     Arnim Metivier ("Arnim") filed suit on January 24, 2008 against Lockheed Martin Corporation ("LMC") and Martin Marietta Corporation ("MMC"), Martin Marietta Aluminum, Inc., Martin Marietta Aluminum Properties, Inc. (collectively "Martin Marietta Defendants"), as well as General Engineering Corporation ("GEC").[4] He sought damages for exposure to bauxite dust, silica, and asbestos while he worked at the former alumina refinery on St. Croix. LMC appeared on its own behalf and on behalf of the Martin Marietta Defendants and answered the complaint. GEC also appeared and answered the complaint. Arnim's case was eventually grouped with several other cases under a master case, *In re: Alumina Dust Claims*, for pretrial proceedings and reassigned to the same judge. *See generally In re: Alumina Dust Claims*, 67 V.I. 172 (Super. Ct. 2017).

---

[4] LMC was sued individually and as successor-in-interest to the Martin Marietta Defendants and MMC was also sued individually and as successor to the other Martin Marietta Defendants.

¶11    On July 15, 2011, LMC moved for summary judgment, claiming that, because Arnim had worked for one or more of the Martin Marietta Defendants at the alumina refinery, LMC had inherited their immunity from suit under the Virgin Islands Workers' Compensation Act. Arnim opposed. Approximately a year later, on April 13, 2012, Arnim filed a stipulation with GEC to dismiss his claims with prejudice, which the Court (Willocks, J.) approved on April 19, 2012, entered April 23, 2012.

¶12    Six years later, on March 2, 2018, Arnim's son, Frederick Metivier ("Frederick"), filed a petition with the Probate Division to be appointed personal representative of his father's estate "for the purpose of filing a civil suit against all parties that may have been responsible for the wrongful death of Arnim Metivier . . . [and] to pursue a survival action in the Superior Court of the Virgin Islands." (Pet. 1, filed Mar, 2, 2018, *In re: Pet. for Appt. of Frederick Metivier as Pers. Rep. of Estate of Arnim Metivier*, Case No. SX-18-MP-001.) Frederick attached a copy of his father's death certificate, which showed that Arnim passed away on April 7, 2013 in Winter Garden, Florida. The petition was not served on LMC or GEC nor was a copy filed in Arnim's civil case. By order dated and entered March 12, 2018, the Court (Camacho, M.) granted the petition and appointed Frederick as personal representative for the Estate of Arnim Metivier. To date, no petition has been filed to open probate proceedings for Arnim.

¶13    Three months later, on June 6, 2018, Frederick, through counsel, filed a motion in Arnim's case for leave to substitute as personal representative. Frederick acknowledged that his motion was not filed within two years after his father's death as required by title 5, section 78 of the Virgin Islands Code but argued that attorney inadvertence and neglect should excuse the delay. LMC opposed, claiming the substitution statute is jurisdictional and the failure to substitute after a party dies cannot be excused for good cause.

### D. *Subnaik v. Hess Oil Virgin Islands Corporation, et al.*

¶14    Vishnu Subnaik ("Vishnu") filed suit on May 1, 2008 against HOVIC, Hess, UOP, Shell, and John Crane Packing Company ("John Crane") for asbestos-related injuries from employment at the St. Croix oil refinery. All the defendants appeared. Vishnu later stipulated with Shell and UOP to dismiss his claims with prejudice in 2009, leaving Hess, HOVIC, and John Crane as the remaining defendants. Once the case went dormant, the Court (Brady, J.) issued an order on September 23,

*In re: Deceased Plaintiffs*
Case Nos. SX-06-CV-198, -221; SX-08-CV-056, 227, -229, -273, -295; SX-11-CV-244
**MEMORANDUM OPINION**
Page 12 of 33

2020 VI Super 53

2011, directing Vishnu to take steps to further his case. Vishnu's wife, Sandra Subnaik ("Sandra"), filed a response on October 17, 2011. She attached a copy of an order the Court (Steele, J.) issued on May 5, 2010, granting her November 5, 2009 *ex parte* petition for appointment as personal representative. And she explained that she and the defendants had been working out a case management order to submit for the Court's approval. However, Sandra did not move to substitute or include a certificate reflecting service of her response on the defendants.

¶15    On August 16, 2012, the Hess Defendants filed a motion to dismiss for failure to prosecute. They noted that Vishnu had "died in an unrelated automobile accident on October 9, 2008. No substitution has been made nor was made within the time allowed by law . . . ." (Hess Defs.' Mot. to Dismiss for Failure to Pros. 1, filed Aug. 16, 2012 (citations omitted)). As support, they attached a print-out from the Social Security Death Index. Attorney Alkon filed a response and opposed dismissal. Unlike the October 17, 2011 response, the response did not refer to Sandra having been appointed personal representative by the Family Court. Instead, Attorney Alkon opposed dismissal because other plaintiffs that he represented had "vigorously prosecuted" their cases against the Hess Defendants and other companies and everyone in the cases grouped under the *In re: Catalyst Litigation* master case had "agreed to pursue these cases first. (Pl.'s Opp'n to Mot. to Dismiss 1-2, filed Aug. 21, 2012.) He concluded by asking that the Court hold a status conference to get the cases, which he referred to as the "Mixed Dust" cases, on track. Hess and HOVIC opposed, claiming that Vishnu had waived substitution because he failed to respond to their argument. They also opposed Vishnu's assertion that the parties to *Subnaik* had effectively agreed to a *de facto* stay. But for reasons not explained to the Court, the Hess Defendants withdrew their dismissal motion on September 25, 2012.

¶16    *Subnaik* was later grouped under the *Refinery Worker* master case in a May 27, 2015 Order, entered June 5, 2015. Sandra formally filed a motion for substitution on June 10, 2015. The Hess Defendants opposed on June 16, 2015 because seven years had passed since Vishnu's death. John Crane did not respond. *Subnaik* was reassigned to the Family Court judge for a period of time, *cf. Willie v. Amerada Hess Corp.*, 66 V.I. 23, 34-36 (Super. Ct. 2017), before being designated as complex, transferred to the newly-established Complex Litigation Division, and reassigned to the undersigned judicial officer who held a hearing in the *Refinery Worker* cases on October 16, 2019,

and heard argument on Sandra's motion.

### E. *Hazell v. Hess Oil Virgin Islands Corporation, et al.*

¶17    Henry Hazell ("Henry") filed suit on May 1, 2008 against HOVIC, Hess, UOP, Shell, and John Crane for damages after he was diagnosed with mixed dust pneumoconiosis allegedly from his employment at the oil refinery on St. Croix. All defendants appeared and answered Henry's complaint. On October 30, 2009, Henry stipulated with Shell to dismiss his claims with prejudice. On December 2, 2009, he stipulated with UOP to do the same. The Court (D'Eramo, J.) approved both stipulations on December 9, 2009. However, the orders were not entered until December 22, 2009. Nothing further occurred until the June 5, 2015 Order was entered grouping *Hazell* with other cases filed in 2006, 2008, and 2011 under the *Refinery Worker* master case and reassigning them to the same judge.

¶18    On June 24, 2015, Altina Hanley ("Altina") filed a petition with the Probate Division to be appointed personal representative of her father Henry's estate to file a wrongful death lawsuit and pursue a survival action. She provided a copy of Henry's death certificate, which showed that Henry passed away on July 19, 2013 on St. Croix. The petition was not served on anyone nor was a copy filed in *Hazell*. It also did not reference Henry's pending lawsuit. The Court (Gallivan, M.) granted the petition a day later, on June 25, 2015, and appointed Altina as personal representative of the Estate of Henry S. Hazell. The Clerk's Office entered the order on June 30, 2015, and closed the miscellaneous probate case. To date, probate proceedings have not been initiated for Henry's estate.

¶19    A week later, on July 8, 2015, Altina, through counsel, filed a motion in *Hazell* to substitute in place of Henry and continue his lawsuit as personal representative. The motion was not served on the remaining defendants, HOVIC, Hess, or John Crane, and thus, they did not file a response. Based on Altina's motion, the case was reassigned to a time to the Family Court before the Presiding Judge designated the case as complex on August 30, 2018, transferred it to the Complex Litigation Division, and reassigned it to the undersigned judicial officer. This Court scheduled *Hazell* for a status conference and oral argument on October 16, 2019, with the *Refinery Worker* cases. During the hearing, the Court informed plaintiff's counsel, regarding Altina's substitution motion, that "[i]t does not appear there's a certificate of service, which may explain why there was no opposition." (*Refinery Worker* Tr. 40:5-7.) John Crane, and Hess and HOVIC, through counsel, confirmed that they

had not been served with Altina's motion. Only Hess and HOVIC voiced their oppose to substitution on timeliness grounds. John Crane did not give its position. To date, proof that the motion was served on the defendants has not been filed.

### F.  *Miller v. Amerada Hess Corporation, et al.*

¶20    Frankie Miller ("Frankie") filed suit on May 30, 2008 against Hess, HOVIC, UOP, and Ingersoll Rand Corporation ("Ingersoll Rand") for asbestos-related injuries from his employment at the St. Croix oil refinery. Hess and HOVIC appeared and answered the complaint. Frankie voluntarily dismissed his claims against Ingersoll Rand in 2008, and UOP in 2009. On October 22, 2010, the Court noted that the case had gone dormant and directed Frankie to take steps to move his case. Frankie responded by filing a notice of service of initial disclosures. Two years later, on August 16, 2012, the Hess Defendants moved to dismiss for failure to prosecute. Frankie filed the same response as Vishnu: that his case had been stayed, effectively, by agreement of the parties while the *Catalyst* cases went forward. The Hess Defendants rejected his arguments. But as in *Subnaik*, the Hess Defendants withdrew their motion on September 25, 2012 without explaining why.

¶21    Three years later, on April 24, 2015, the Hess Defendants filed another motion to dismiss—for failure to substitute. Hess and HOVIC explained that Frankie had died on May 23, 2011. (*See* Hess Defs.' Mot. to Dismiss 1, filed Apr. 24, 2015 ("On May 23, 2011, Plaintiff Frankie Miller died at the age of 76.").) They attached a copy of Frankie's obituary, published in the *St. Croix Avis* on May 27, 2011, in support. As four years had passed and no one substituted, Hess and HOVIC argued that this case must be dismissed. Six weeks later, on June 5, 2015, Frankie and the Hess Defendants, through counsel, filed a stipulation for dismissal with prejudice and a proposed order. On August 5, 2015, the Administrative Judge reassigned *Miller* to the Family Court judge for all further proceedings.

¶22    On November 20, 2015, the Court (Hinds Roach, J.) issued an order to alert the parties to the following concerns:

> The first concern the Court has is the scope of authority an attorney has to make decisions after his client has died. Although at present there is no binding authority in the Virgin Islands addressing this question, *cf. Banks v. Int'l Rental & Leasing Corp.*, 55 V.I. 967 (2011), the general rule "under well-established principles of agency law" is that " an agent's authority terminates upon the death of the principal. The lawyer-client relationship is not excepted from this rule." *Brantley v. Fallston Gen. Hops.*, 636 A.2d 444, 446 (Md. 1994) (internal citation omitted). *Accord Jones v. Montgomery Ward & Co.*, 725 P.2d 836, 838 (Ariz. Ct. App. 1985) ("'The general rule is that the death

of a party terminates the power of his attorney to act in his favor.") (collecting cases). *But see Brantley*, 636 A.2d at 446 (noting an exception where an attorney "can show that he or she was specifically retained by the client to continue the representation even beyond death" (citing *Vincent v. Vincent*, 554 P.2d 374, 378 (Wash. Ct. App. 1976)). Accepting, for the purposes of this order only, that Mr. Miller died on May 23, 2011 as the Hess Defendants represented in their April 24, 2015 Motion, then the question becomes whether Mr. Miller's attorney could enter into the June 5, 2015 Stipulation with the Hess Defendants' attorney. If not, then the June 5, 2015 stipulation is not properly before the Court.

The second concern is the effect of section 78 of title 5 of the Virgin Islands Code on this action. Section 78 directs in part that "[n]o action shall abate by the death ... of a party ... if the cause of action survives or continues. In case of the death ... of a party, the court may at any time within two years thereafter, on motion, allow the action to be continued by or against his personal representatives or successor in interest." The Supreme Court of the Virgin Islands reaffirmed in *Sweeney v. Ombres*, 60 V.I. 438, 443 (2014), that "the two-year limitations period in section 78 ... governs substitution of deceased parties in Superior Court proceedings." *Sweeney* was based on an earlier decision, *Hodge v. McGowan*, 50 V.I. 296 (2008), which had held that section 78, and not Federal Rule of Civil Procedure 25 through Superior Court 7, governs substitution after death. Here, the Hess Defendants initially moved to dismiss this action because a personal representative was not substituted for Mr. Miller within two years of his death. But the Hess Defendants did not file a suggestion of Mr. Miller's death. They also did not serve a copy of their April 24, 2015 Motion on any of Mr. Miller's survivors, which they were aware of since they attached to their Motion a print-out of an online newspaper's obituary notice for Mr. Miller. Instead, in their Motion, the Hess Defendants argue that "Plaintiff failed to amend the complaint to allow the action to be continued by his personal representative or successor in interest." (Hess Defs.' Mot. to Dismiss 1, filed Apr. 24, 2015.) But the Hess Defendants fail to appreciate the illogic of their argument. the Plaintiff, Mr. Miller, could not move to amend his own complaint because he died. And, assuming for purposes of this order that the Virgin Islands would join the other jurisdictions in holding that death terminates the attorney-client agency relationship, then Mr. Miller's attorney also was powerless to move to amend his complaint.

No court in the Virgin Islands has yet addressed how (procedurally-speaking) substitution after death occurs under section 78 of title 5. In *Brantley*, for example, the Court of Appeals of Maryland explained that, under the former Maryland substitution statute,

> if a successor in interest did not appear and request substitution at the term of court at which the suggestion of death was made, the defendant would issue a summons for the proper person to prosecute the action. If that person failed to appear in obedience to the summons, the court issued an attachment of contempt, and if no appearance was made within a stated time after service of the attachment, judgment of non-

suit was entered[.]

> 636 A.2d at 447. Thus, Maryland courts put the initial burden on the deceased party's survivors to appear and, if they did not, then the opposing party would have to attempt to substitute one or more survivors into the deceased party's case. In contrast, the Supreme Court of Wisconsin held—in construing its substitution statute (which was modeled after the federal rule of civil procedure)—that the suggestion of death should be served on the deceased party's attorney. *Schwister v. Schoenecker*, 654 N.W.2d 852, 862-63 (Wis. 2002). But the court qualified that service on the former attorney alone was not sufficient to start the clock on the Wisconsin statutory substitution period because the "attorney's agency to act on behalf of a client ends with the death of the client" and therefore the attorney is no longer "a person with a right to decide or an interest in deciding whether a motion for substitution should be filed." *Id.* at 863. Instead, the party filing the suggestion of another party's death must- in addition to serving the deceased party's attorney-also "identify and serve appropriate persons with the suggestion of death" such as any "heirs, beneficiaries, successors, and representatives" of the deceased party. *Id.* at 863-64. The Virgin Islands substitution statute requires substitution on motion, but who has the duty to make the motion, and who should be served with that motion, and further when the two year substitution period begins to run, is unclear.

(Order 2-3, entered Nov. 20, 2015.)

¶23    The Court set a briefing schedule, directed that the parties address whether certifying the question pursuant to title 4, section 33(c) of the Virgin Islands Code would be appropriate and provided that, if the Court concluded that Frankie's death terminated his attorney's authority to act on his behalf, Attorney Alkon would be deemed appointed as an *amicus curiae. See id.* at 3 (citing *State ex rel. Comm'r of Transp. v. Eagle*, 63 S.W.3d 734, 758 (Tenn. Ct. App. 2001); *Ryan v. Commodity Futures Trading Comm'n*, 125 F.3d 1062, 1063 (7th Cir. 1997)). The Hess Defendants filed their brief on December 9, 2015, Frankie (or Attorney Alkon as *amicus*) filed his response on December 16, 2015. And, after an extension of time, the Hess Defendants filed their reply on January 8, 2016.

¶24    The Presiding Judge later designated *Miller* complex in August 2018, transferred it to the Complex Litigation Division, and reassigned it to the undersigned judge. The Court added *Miller* to the *Refinery Worker* master case and heard argument on October 16, 2019.

### G. *Prime v. Lockheed Martin Corporation, et al.*

¶25    On June 9, 2008, Samuel Prime ("Samuel") filed a complaint against LMC, MMC, and the Martin Marietta Defendants, as well as GEC for damages from exposure to bauxite and silica dusts and asbestos while working at the former alumina refinery on St. Croix. LMC appeared and

answered the complaint on its own behalf and on behalf of the Martin Marietta defendants. GEC also appeared and answered the complaint. *Prime* was later grouped with other cases under the *In re: Alumina Dust Claims* master case. Like *Metivier*, LMC moved for summary judgment against Samuel in July 2011, claiming Samuel had worked for one or more of the Martin Marietta defendants and, therefore, LMC inherited their immunity from suit. Samuel later stipulated to dismiss his claims against GEC in April 2012, leaving only LMC and the Martin Marietta Defendants. In January 2019, the Presiding Judge designated the *Alumina Dust* cases complex, transferred them to the Complex Litigation Division, and reassigned them to the undersigned judicial officer.

¶26    On August 5, 2019, Samuel's son, Hollis Prime ("Hollis"), filed a motion to substitute himself as personal representative for Samuel to continue Samuel's lawsuit as a survival action. Hollis did not state when his father passed away, however. LMC opposed for that reason: because Hollis's motion omitted "a key fact: Samuel . . . died on January 9, 2010." (Def. Lockheed Martin Corp.'s Opp'n to Mot. to Substitute Hollis Prime as Pers. Rep for Pl. 1, field Aug. 30, 2019.) In his reply, Hollis detailed the steps he and his father's attorney took regarding substitution and asked the Court to find good cause to excuse counsel's neglect in not filing the substitution motion sooner.

### H.  *Weekes v. Lockheed Martin Corporation, et al.*

¶27    On May 9, 2011, John A. Weekes ("John") filed a complaint primarily against LMC and the Martin Marietta Defendants. Over several amendment, John dropped Alleris Rolled Products, Inc. and GEC, added Glencore, Ltd. ("Glencore"), and added and dropped Tang How Brothers, Inc. and Zenon Construction Company. Presently, LMC, as successor to the Martin Marietta Defendants, and Glencore are the only defendants. John filed suit to recover damages from his exposure to silica dust released from the bauxite used at the former alumina refinery on St. Croix where he worked from 1976 to 1983 and from 1990 to 1995. LMC appeared and on July 7, 2011, moved to dismiss for failure to state a claim for relief. As in *Metivier* and *Prime*, LMC argued that John's lawsuit was barred because he used to work for companies that, through successive mergers and acquisitions, LMC became the successor to. Glencore also appeared and on August 15, 2011, moved to dismiss for failure to state a claim for relief. Glencore argued first, that the Martin Marietta Defendants were sophisticated purchasers and thus Glencore could rely on them to pass on any warnings to the end user, the workers. And second, Glencore argued that bauxite was a mineral, a naturally-occurring

*In re: Deceased Plaintiffs*
Case Nos. SX-06-CV-198, -221; SX-08-CV-056, 227, -229, -273, -295; SX-11-CV-244
**MEMORANDUM OPINION**
Page 18 of 33

2020 VI Super 53

product, and thus, could not be supplied defectively when supplied in its raw form. The Court (Willocks, J.) later grouped John's case with several others filed around the same time, initially under one of the individual plaintiff's cases but then under a master case, *In re: Bauxite Containing Silica Halliday Litigation Series*, Case No. SX-15-CV-097. The Presiding Judge later designated all the cases, including the master case, as complex, transferred them to the Complex Litigation Division, and reassigned them to the undersigned judicial officer. This Court held a status conference and heard argument on December 17, 2018, denying LMC's and Glencore's motions from the bench because they raised grounds not appropriate to a pre-answer motion.

¶28     Efforts to streamline the litigation saw John amend his complaint to drop the Martin Marietta Defendants as direct defendants, name LMC in its successor capacity only, and remove the other defendants who were no longer parties to his case. Glencore answered the third-amended complaint. LMC moved to dismiss, reasserting the same argument (the workers' compensation bar) the Court rejected. John's attorneys filed an opposition to LMC's second motion to dismiss and a proposed fourth amended complaint titled *John Doe, as the Personal Representative of the Estate of John Weekes v. Lockheed Martin Corporation and Glencore, PLC*. LMC objected to the improper attempt to make a motion within a response in opposition. Glencore did not respond.

¶29     Approximately a month after LMC's second motion was fully briefed, and two months after John's attorneys filed the proposed fourth amended complaint, John's daughter, Tamyka Khan ("Tamyka"), filed a motion on May 21, 2019, for leave to substitute as John's personal representative and continue the lawsuit on behalf of the Estate of John Weekes. Tamyka attached a copy of her father's death certificate, which showed that John died approximately two-and-a-half years earlier, on October 17, 2016 on St. Croix. Tamyka did not explain the delay or move the Court to excuse it. She did represent, however, that she had conferred with LMC (but not Glencore) and that LMC may oppose. LMC did oppose and disputed Tamyka's meet-and-confer representation. On August 12, 2019, the Court struck Tamyka's motion failure to follow Standing Orders the Court issued to govern complex litigation cases, struck LMC's response for not serving all counsel, and struck the fourth amended complaint as improper.[5] Tamyka refiled her motion on August 26, 2019. Her second

_____

[5] As the August 12, 2019 Order explained:

motion argued that the substitution statute, title 5, section 78 of the Virgin Islands Code, was not jurisdictional and further, that any delay should be excused. LMC and Glencore opposed Tamyka's motion. The Court heard argument on October 16, 2019 and took it under advisement.

---

Standing Order No. 4 provides that counsel must "meet and confer before filing any motion or request, including dispositive motions and discovery motions, so that the issues are crystalized and ancillary matters are reduced." And Standing Order No.2 directs that 'electronic service is adopted for all papers served in Complex Litigation Division cases, unless a person declines electronic service in writing." These requirements were adopted to reduce 'ancillary' matters and ensure that all parties receive timely notice of issues raised in each case.

The meet-and-confer requirement was broadened to include dispositive motions as well as discovery motions because oftentimes counsel learn each other's positions through their motion papers, which is inefficient particularly in complex litigation. Rather than file a motion for leave to amend the complaint in response to a motion to dismiss or for a more definite statement, counsel might be able to reduce additional cost and further delay if they met and conferred first. Even if counsel cannot agree, by meeting and conferring first, the Court is given notice of which parties will oppose. In this instance, counsel for Tamyka Khan certified that a meet and confer was held [and] that an opposition may be forthcoming. Counsel for Defendant Lockheed Martin successfully rebutted that certification, countering that the parties did not, in fact, meet and Khan's counsel's representation may have been based on prior conversations about other cases. Unless counsel enter into a [global] stipulation of non-opposition to each other's motions, discussions about prior motions cannot be grafted onto subsequent motions filed in the same case or in different cases, including master cases. To be clear, the meet-and-confer requirement is case- as well as motion-specific. Because Standing Order No.4 was not complied with, Tamyka Khan's motion must be stricken.

Lockheed Martin's June 17, 2019 response must also be stricken because a copy was served by first-class mail not electronically and only on one attorney, Thomas Alkon, Esq., not all attorneys, in contravention of Standing Order No.2. Attorney Alkon did not file written notice objecting to electronic service. Thus, Lockheed Martin should have served its response electronically. But more importantly, J. Russell B. Pate, Esq. Korey A. Nelson, Esq., Warren T. Burns, Esq., and Daniel H. Charest, Esq. also filed the motion on behalf of Khan along with Attorney Alkon, Esq. Yet, Lockheed Martin failed to serve them as well. Likewise, Glencore was not also served and would not know of the deadline to join Lockheed Martin's "opposition by filing a paper titled 'Joinder.'" Such "selective service" will not be tolerated. To be clear, all papers must be served on all parties or their counsel, including co-counsel, unless counsel otherwise agree among themselves and designate a lead attorney or move the Court for similar relief. Because Lockheed Martin only served one of Khan's attorneys. and failed to serve all other attorneys who appeared in this case, its response must be stricken.

Lastly, the Court notes that two months before Khan filed her substitution motion, Attorneys Burns, Charest, Nelson, and Pate filed a document on March 11, 2019 entitled Fourth Amended Complaint purportedly brought by "John Doe" as personal representative of the Estate of John Weekes. This pleading must be stricken for several reasons. First, it was filed without leave. Second, it was filed by a fictitious party. With few exceptions not relevant here, such as *qui tam* actions, a case cannot be commenced or continued by a John Doe plaintiff. Third, according to the affidavit Khan executed and attached to her substitution motion, she did not agree to substitute as plaintiff until March 19, 2019, a week after the Fourth Amended Complaint had been filed. Finally, since Khan has not been granted permission to substitute yet, and did not seek leave for another two months, and since death terminates the attorney-client relationship, the March 11, 2019 Fourth Amended Complaint is improper and must be stricken.

(Order 1-3, entered Aug. 12, 2019 (ellipses, brackets, and citations omitted).)

## II.   DISCUSSION

¶30    The broad question raised here is whether title 5, section 78 of the Virgin Islands Code is jurisdictional or a claims-processing rule. This Court and another Superior Court judge concluded that it is not jurisdictional. *See Martinez v. Hess Oil V.I. Corp.*, 69 V.I. 519, 541 (Super. Ct. 2018); *Jones v. Lockheed Martin Corp.*, 68 V.I. 158, 180 (Super. Ct. 2017). "'Instead, like a statute of limitation, Section 78 is simply a rule for processing a party's claims. . . [F]ailure to raise the timeliness of a substitution motion means the untimeliness defense is either waived or forfeited.'" *Martinez*, 69 V.I. at 541 (quoting *Jones*, 68 V.I. at 180)). But "decisions of trial level courts are not binding on any other court, including that same trial court." *Der Weer v. Hess Oil V.I. Corp.*, 60 V.I. 91, 101 (Super. Ct. 2014). And these cases present more nuanced issues because the defendants did not oppose substitution in *Jones*, *see* 68 V.I. at 165, 186, & 188, or in *Martinez*. *See* 69 V.I. at 524. Here, by contrast, substitution is opposed in *Hughes*, *Metivier*, *Subnaik*, *Hughes*, *Prime*, and *Weekes*. And, while no motion to substitute has been filed in *Barbell* or *Miller*, all parties are on notice that the plaintiffs in those cases passed away. But, before addressing specifics, some background is necessary for context.

¶31    "At common law, all personal injury, or tort, claims ended, or abated, when the person who was injured died or when the person who caused the injury, the tortfeasor, died." *Der Weer v. Hess Oil Virgin Island Corp.*, 61 V.I. 87, 98 (Super. Ct. 2014). This common law rule was abrogated by statute in many jurisdictions. In the Virgin Islands, it was abrogated by title 5, section 77 of the Virgin Islands Code. *See* 5 V.I.C. § 77 ("A thing in action arising out of a wrong which results in physical injury to the person or out of a statute imposing liability for such injury shall not abate by reason of the death of the wrongdoer or any other person liable for damages for such injury, nor by reason of the death of the person injured or of any other person who owns any such thing in action."). Thus, whether the person who caused an injury dies, or the person who was injured dies, an action may be filed by or against that individual's personal representative. *See id.* § 37(a) (personal representative as plaintiff); *id.* § 37(b) (personal representative as defendant). Additionally, if someone dies after an action has been filed in court, the action does not abate.

*In re: Deceased Plaintiffs*
Case Nos. SX-06-CV-198, -221; SX-08-CV-056, 227, -229, -273, -295; SX-11-CV-244
**MEMORANDUM OPINION**
Page 21 of 33

2020 VI Super 53

Instead, "if the cause of action survives or continues," 5 V.I.C. § 78,[6] then "the court may at any time within two years thereafter, on motion, allow the action to be continued by or against his personal representatives or successor in interest." *Id.* But when must the motion be filed, by whom, must death be suggested on the record first, when does the two-year clock begin, can it be tolled or the delay excused, and can a court take notice of death *sua sponte*? These are the questions raised in the cases grouped under this Opinion.

¶32    To be clear, "[s]ubstitution of parties and revivor of actions are different names for the same thing." *Livingston v. Bias*, 640 P.2d 362, 364-65 (Kan. Ct. App. 1982). "The revivor of an action is in fact the substitution of new parties who have the right, under the substantive law, to go ahead with the prosecution or defense of the claim." *Id.* at 365. Once "an action has been commenced and a necessary party to the action dies, a procedure is required to bring into court the persons who have become, by right of succession under the substantive law, the real parties in interest." *Id.* In most jurisdictions, including the Virgin Islands, that procedure requires a motion. *See* 5 V.I.C. § 78. *See also, e.g.,* Fed. R. Civ. P. 25(a); Nev. R. Civ. P. 25(a); Kan. Stat. Ann. § 60-255(a)(1). And in some jurisdictions, a personal representative, i.e., an executor or an administrator, must be appointed first, before a case can be commenced or revived. *Cf. Drumm v. Rigberg*, 7 Phila. 333, 337 (1982) ("[T]he personal representative must be appointed within the statutory time period before an action is commenced against the decedent's estate."); *accord Estate of Paulk v. Lott*, 217 So. 3d 747, 751 n.6 (Miss. Ct. App. 2017) ("Ordinarily, if 'litigants wish to pursue a claim on behalf of the estate

---

[6] Not all claims continue after death. At common law, "property and contract claims do not abate upon a person's death." *Augustin v. Hess Oil V.I. Corp.*, 67 V.I. 488, 505 (Super. Ct. 2017). Whether statutory claims survive, or tort claims without physical injury, depends on each jurisdiction's survival statute. *See, e.g., Guarantee Tr. Life Ins. Co. v. Estate of Casper*, 418 P.3d 1163, 1168 (Colo. 2018) ("We note that the survival statute provides that *all actions survive* the death of either party *except* actions for slander or libel." (emphasis added)). *Cf. Memphis Dev. Found. v. Factors Etc., Inc.*, 616 F.2d 956, 959 (6th Cir. 1980). ("There is no right of action for defamation after death." (citing *Restatement (Second) of Torts* § 560 (1977)). *But see MacDonald v. Time, Inc.*, 554 F. Supp. 1053, 1054 (D.N.J. 1983) ("Why should a claim for a damaged leg survive one's death, where a claim for a damaged name does not. After death, the leg cannot be healed, but the reputation can." (footnote omitted)). *See also, e.g., Lindsay by & Through Lindsay v. S. San Antonio Indep. Sch. Dist.*, 983 S.W.2d 778, 780 (Tex. Ct. App. 1998) ("[A] statutory claim for disability benefits was sufficiently analogous to common law breach of contract to permit the claim to survive the death of the claimant."); *Lincoln Nat'l Life Ins. Co. v. Silver*, Civ. No. 86-7175, 1990 U.S. Dist. LEXIS 13669, *11 (N.D. Ill. Oct. 4, 1990) (observing that several federal "courts have found that antitrust claims survive the death of a party."). *But see, e.g., Flores v. MUFG Union Bank N.A.*, No. 11-cv-0022, 2017 U.S. Dist. LEXIS 54038, *2 (D. N. Mar. I. Apr. 6, 2017) (territorial consumer protection act claim did not survive death); *Sperber v. Schwartz*, 527 N.Y.S.2d 279, 281 (App. Div. 1988) ("It is well settled that where one party to a divorce action dies prior to the rendering of a judicial determination which dissolves or terminates the marriage, the action abates inasmuch as the marital relationship between the parties no longer exists." (citations omitted)).

*In re: Deceased Plaintiffs*
Case Nos. SX-06-CV-198, -221; SX-08-CV-056, 227, -229, -273, -295; SX-11-CV-244
**MEMORANDUM OPINION**
Page 22 of 33

2020 VI Super 53

of the deceased, such estate must, of course, be opened and administered through the chancery court." (quoting *Delta Health Grp. Inc. v. Estate of Pope ex rel. Payne*, 995 So. 2d 123, 125 (Miss. 2008)). But not in the Virgin Islands. In promulgating rules of procedure for the Territory, the Supreme Court of the Virgin Islands "expressly and unambiguously eliminated the requirement to open an estate as a prerequisite for bringing or maintaining . . . a survival [action]." *Augustin v. Hess Oil V.I. Corp.*, 67 V.I. 488, 519 (Super. Ct. 2017). The Virgin Islands Supreme Court also promulgated a rule regarding substitution. Rule 25 of the Virgin Islands Rules of Civil Procedure provides that "[a] motion for substitution may be made by any party or by the decedent's successor or representative . . . [and] may be granted at any time within two years after the death." V.I. R. Civ. P. 25(a)(1).

¶33   In *Jones*, another Superior Court judge questioned whether title 5, section 78 of the Virgin Islands Code was superseded by Rule 25 of the Virgin Islands Rules of Civil Procedure. *See Jones*, 67 V.I. at 169-71 & 184 n.9. The question arose because the motions to substitute a personal representative were filed more than two years after death. If section 78 was jurisdictional, then the statutory two-year deadline controlled. If section 78 was not jurisdictional, then the statute may have been implicitly repealed when the rule was promulgated because both governed procedure. *See id.* at 181-82 (discussing concurrent authority of judicial and legislative branches to promulgate rules of procedure for courts). Ultimately, the Court concluded that "the conflict (if any) between Section 78 and Rule 25 need not be resolved," *id.* at 183, because section 78's two-year deadline was "akin to a statute of limitations . . . ." *Id.* at 196. The defendants waived any objection to timeliness by not opposing the motions to substitute. And the motions at issue in *Jones* were filed before Rule 25 took effect. *Cf. id.* at 194 n.9. Unlike *Jones*, this Court must consider the impact, if any, Rule 25 had on the procedure for substituting a personal representative after a party dies because the motions in *Subnaik*, *Hazell*, and *Hughes* were filed before Rule 25 took effect, while the motions in *Weekes*, *Prime*, and *Metivier* were filed after Rule 25 took effect. No motion was filed in *Miller* or *Barbell*. And the motions in *Hughes* and *Hazell* were supplemented or renewed after Rule 25 took effect. The problem is that, Rule 25 governs to the exclusion of section 78, no one followed it here.

¶34   "Virgin Islands Rule of Civil Procedure 25(a) appears to be modeled largely after Federal Rule of Civil Procedure 25(a), though the two rules differ in one important aspect . . . ." *Id.* at 184 n.9.

Rule 25 retained the two-year time limit in section 78. But it adopted nearly every other aspect of the federal rule. For example, both rules require that "[t]he death should be noted on the record." V.I. R. Civ. P. 25(a)(2); *accord* Fed. R. Civ. P. 25(a)(2) ("The death should be noted on the record."). Both rules also require that the substitution motion "together with a notice of hearing, must be served on the parties as provided in Rule 5 and on nonparties as provided in Rule 4." V.I. R. Civ. P. 25(a)(3); *accord* Fed. R. Civ. P. 25(a)(3) ("A motion to substitute, together with a notice of hearing, must be served on the parties as provided in Rule 5 and on nonparties as provided in Rule 4."). Statements noting death also "must be served in the same manner." V.I. R. Civ. P. 25(a)(3); *accord* Fed. R. Civ. P. 25(a)(3) ("A statement noting death must be served in the same manner."). There are only three differences between the two rules: the length of time for substitution, the scope of service, and the requirement to dismiss the case if substitution is not effected. The Virgin Islands rule does not provide that "[s]ervice may be made in any judicial district," Fed. R. Civ. P. 25(a)(3), or that "the action by or against the decedent *must be dismissed*," Fed. R. Civ. P. 25(a)(1) (emphasis added), "[i]f the motion is not made within 90 days after service of a statement noting the death . . . ." *Id.* The Virgin Islands rule provides that a motion to substitute "*may* be granted at any time within two years after the death." V.I. R. Civ. P. 25(a)(1) (emphasis added). It does not mandate dismissal, not explicitly that is.

¶35    To understand the similarities and differences between the two rules, and the potential impact on Virgin Islands practice and procedure given the adoption of several aspects of the federal rule, the Court must address how substitution proceeds in federal court and how the federal rule came about. Initially, Rule 25 of the Federal Rules of Civil Procedure was similar to title 5, section 78 of the Virgin Islands Code. The federal rule, when first promulgated, provided that "'[i]f a party dies and the claim is not thereby extinguished, the court within 2 years after the death may order substitution of the proper parties. If substitution is not so made, the action shall be dismissed as to the deceased party.'" *Anderson v. Yungkau*, 329 U.S. 482, 484 (1947) (quoting Fed. R. Civ. P. 25(a) (1947 ed.)), *superseded by Amends. to Rules of Civ. Proc. for the U.S. Dist. Cts.*, 374 U.S. 861 (1963). Anderson had "sued to recover stock assessments from shareholders of the Banco Kentucky Co." 329 U.S. at 483. Seven cases were filed; six were stayed while one went forward. *See id.* The shareholders died during the course of litigation. So Anderson, as "receiver of the National Bank of

Kentucky, moved in the district court to revive against the respective executors of seven defendants named in civil actions brought against them, while alive . . . ." *Anderson v. Yungkau*, 153 F.2d 685, 686 (6th Cir. 1946), *aff'd* 392 U.S. 482 (1947). The district court denied the motions to revive the cases and substitute the executors of the shareholders' estates and, instead, granted the executors' motions to dismiss. *See id.* Anderson appealed and lost. *See id.* at 688. He petitioned the Supreme Court of the United States for a writ of certiorari. But he lost there too. He argued in the trial court and on appeal that the delay should be excused. *See* 153 F.2d at 687 ("The appellant urges that Rule 6(b) 'permits enlargement' in all cases when by the civil procedure rules an act is required to be done within a specified time, with the two exceptions stated in the rule, namely, the period for taking any action under Rule 59 concerning new trials, and the period for taking an appeal."). The United States District Court for the Eastern District of Kentucky, the United States Court of Appeals for the Sixth Circuit, and the Supreme Court of the United States all disagreed. *See Anderson v. Brady*, 1 F.R.D. 589, 590-91(E.D. Ken. 1941); *Anderson*, 153 F.2d at 687-88; *Anderson*, 392 U.S. at 485-86. But it was not unanimous. *Cf. Anderson*, 153 F.2d at 688 (Simon, J., dissenting); *Anderson* 392 U.S. at 486 (Rutledge, J., dissenting).

¶36    Essentially, the *Anderson* courts concluded that two years was enough time to substitute and that the limitation period could not be extended. The rule was based on a statute. *See* 153 F.2d at 687 ("Prior to the adoption of Rule 25(a)(1), the period of limitation for reviving an action against the estate of a defendant was fixed by section 778 of 28 U.S.C.A., Judicial Code, at two years after his death."). And when the rule was promulgated, the same time limit, two years, was "written into the rule." *Id.* Thus, "[i]f, within two years after death, substitution of the proper parties has not been made, the rule commands the court to dismiss the action against the deceased party." *Id.* The Supreme Court agreed. The Court reasoned that the statute, on which the rule was based, "was a statute of repose. It was designed to keep short the time within which actions might be revived so that the closing and distribution of estates might not be interminably delayed." 392 U.S. at 485. "Even within the two-year period substitution is not a matter of right," the Court observed. *Id.* "[T]he court 'may' order substitution but it is under no duty to do so." *Id.* "[T]he settlement and distribution of the estate might be so far advanced as to warrant a denial of the motion for substitution within the two-year period." *Id.* The Court acknowledged that there might be "more force" to Anderson's

argument if Rule 25 did not mandate dismissal. *See id.* at 485-86. But dismissal was mandated. "The federal law embodied in Rule 25(a) has a direct impact on the probate of estates in the state courts." *Id.* at 486. "It should not be construed to be more disruptive," the Court reasoned, "of prompt and orderly probate administration in those courts than its language makes necessary." *Id.*

¶37    Rule 6 of the Federal Rules of Civil Procedure was later amended in furtherance of *Anderson* to expressly reference Rule 25 among the time limitations that cannot be extended for excusable neglect. *Cf. Iovino v. Waterson*, 274 F.2d 41, 49 (2d Cir. 1959) (referencing the "amendment of F.R. 6(b) on December 27, 1946, adding Rule 25 as a rule specifically excepted from its operation . . . ."). Attempts were made to undo *Anderson. Cf. id.* at 50 (noting "the Supreme Court's failure to adopt the recommendation of the Advisory Committee in its report of October 1955 for the deletion of the two-year provision of Rule 25(a)(1) in favor of a rule that the action might be dismissed as to a deceased party if substitution were not made within a reasonable time."). But they were not successful until 1963. "The 1963 amendment of Rule 25(a)(1) was designed to eliminate the 'hardships and inequities' of the unyielding requirement of the former rule that an action was to be dismissed as to a deceased party if substitution was not effected within a fixed period measured from the time of death." *Farrington v. Benjamin*, 20 V.I. 470. 472 (D.V.I. 1984). The two-year time limit was removed from Rule 25(a). *See* 31 F.R.D. at 638. And the following language was added: "Unless the motion for substitution is made not later than 90 days after the death is suggested upon the record by service of a statement of the fact of the death as provided herein for the service of the motion, the action shall be dismissed as to the deceased party." *Id.* (italics omitted). Rule 6(b) was also amended to remove the reference to Rule 25. *See id.* at 633; *see also id.* ("The prohibition against extending the time for taking action under Rule 25 (Substitution of parties) is eliminated. The only limitation of time provided for in amended Rule 25 is the 90–day period following a suggestion upon the record of the death of a party within which to make a motion to substitute the proper parties for the deceased party. . . . It is intended that the court shall have discretion to enlarge that period.").

¶38    "Prior to its amendment in 1963, Rule 25(a)(1) required the court to dismiss a case if no motion for substitution was filed within two years after date of death, and no extensions of this period were allowed under Rule 6(b)." *Rende v. Kay*, 415 F.2d 983, 984 (D.C. Cir. 1969). "The rule was rigorously applied, often with harsh results, and was called 'easily the poorest rule of all the

*In re: Deceased Plaintiffs*
Case Nos. SX-06-CV-198, -221; SX-08-CV-056, 227, -229, -273, -295; SX-11-CV-244
**MEMORANDUM OPINION**
Page 26 of 33

2020 VI Super 53

Federal Rules.'" *Id.* (footnote and citation omitted).

> Under the amended Rule either a party or 'the successors or representatives of the deceased party' may avoid delay in effecting substitution for the deceased party either by filing a motion for substitution or by suggesting death on the record and thus triggering the 90-day period which begins with suggestion of death.

*Id.* Following the amendments to Rule 25, it is now clear that the suggestion of death on the record commences the time to substitute. *See Unicorn Tales v. Banerjee*, 138 F.3d 467, 469 (2d Cir. 1998) ("The present version of the rule . . . establishes a time limit *starting from* the time 'information of the death is provided by means of a suggestion of death upon the record.'" (quoting Fed. R. Civ. P. 25(a)(1)); *see also Antoine v. Hess Oil V.I. Corp.*, Case No. SX-05-CV-508, 2017 V.I. LEXIS 44, at *12 (V.I. Super. Ct. Mar. 10, 2017) ("Some courts have held that the time to file a motion to substitute does not begin to run until a suggestion of death, or at least a motion to substitute, has been served on the deceased party's representative or successor because courts only have power, or jurisdiction, over the parties to a case. The personal representative or successor must be made a party first before the court acquires jurisdiction over a nonparty." (footnotes omitted) (collecting cases)).

¶39 To be clear, in federal court "the 90-day clock does not begin to run at the party's death; rather, it begins to run after a valid suggestion of death is made." *Cuoco v. Palisades Collection, LLC*, Civ. No. 13-6592 (JLL), 2014 U.S. Dist. LEXIS 31660, *25 (D.N.J. Mar. 11, 2014). And even more importantly, the time to substitute also "does not begin until a 'statement noting the death' (commonly referred to as a 'suggestion of death' based on the prior wording of Rule 25) *is served.*" *Mandarino v. Mandarino*, 257 F.R.D. 394, 395 (S.D.N.Y. 2009) (emphasis added)). Service of the suggestion of death, if it is to be served on a nonparty, must be effected like summons via Rule 4. And the suggestion of death may also have to "identify the representative or successor of an estate who may be substituted as a party for the deceased before Rule 25(a)(1) may be invoked . . . ." *Rende*, 415 F.2d at 986. If not, the suggestion must at least "be served on the involved parties." *Unicorn Tales*, 138 F.3d at 470 (disagreeing with *Rende*). And "[w]hile it is clear that the 1963 amendments were designed to liberalize substitution after death, it is equally clear that Rules 6(b) and 25(a)(1) do not invite courts to enlarge arbitrarily the period within which motions for substitution will be considered." *Farrington*, 20 V.I. at 473.

¶40 Like the federal rule, the Virgin Islands rule requires that "[a] statement noting death must

be served in the same manner[,]" V.I. R. Civ. P. 25(a)(3), meaning in the same manner as "[a] motion to substitute . . . on the parties as provided in Rule 5 and on nonparties as provided in Rule 4." *Id.* And "any party or . . . the decedent's successor or representative" may file "[a] motion for substitution." V.I. R. Civ. P. 25(a)(1). None of the successors and representative of the deceased plaintiffs filed a suggestion of death in these cases, not even after Rule 25 was promulgated. And, of course, section 78 does not require a suggestion of death. It requires only a motion made within two years from the date of death. So, if the promulgation of Rule 25 of the Virgin Islands Rules of Civil Procedure implicitly repealed title 5, section 78 of the Virgin Islands Code, then all motions before the Court may be timely as "the two-year deadline for substitution may not have begun to run yet [if] the suggestion of death is the formal event under federal law that starts the running of the clock." *Jones*, 68 V.I. at 184 n.9.

¶41     But two differences between Federal Rule 25(a) and Virgin Islands Rule 25(a) remain crucial. First, the Virgin Islands rule retained the two-year deadline for substitution, which the federal rule discarded in favor of a 90-day deadline that begins after death is first suggested on the record. Second, while the federal rule mandates dismissal if more than 90 days have passed after death was suggested on the record, and the decedent's successor or representative has not come forward, the Virgin Islands rule does not mandate dismissal, not explicitly. Instead, mirroring section 78, the rule provides that "[t]he motion may be granted at any time within two years after the death." V.I. R. Civ. P. 25(a)(1). Thus, the date of death is still controlling under the Virgin Islands rule. And here, all motions to substitute were filed more than two years after the death of the plaintiffs.

¶42     Counsel argue in favor of applying Rule 6(b) to find excusable neglect in *Hughes*, *Metivier*, *Weekes*, and *Prime*. Rule 6(b) of the Virgin Islands Rules of Civil Procedure, like Rule 6(b) of the Federal Rules of Civil Procedure, does not reference Rule 25 as one of the rules under which "[a] court may not extend the time to act . . . ." V.I. R. Civ. P. 6(b). But the Court cannot necessarily read its omission to also mean its inclusion. It is clear that Virgin Islands Rule 25(a) was modeled after Federal Rule 25(a) and "the body of case law construing that rule may properly be considered in construing [the Virgin Islands rule] . . . ." *Slack v. Slack*, 69 V.I. 567, 573 (2018). It is not clear, however, that the body of federal case law can be used to rewrite Virgin Islands precedent. *Accord Ventura v. People*, 64 V.I. 589, 616 (2016) ("[B]orrowed rules are generally not construed the same

as borrowed statutes and courts are not required to 'incorporate the construction given them by the highest court of the jurisdiction from which they were borrowed.'" (citation omitted)). Instead, it merely informs the interpretation of the Virgin Islands rule. And here, the Court cannot find that the Supreme Court of the Virgin Islands, when it borrowed the suggestion of death on the record requirement, it meant to delay the requirement of granting the motion "within two years after the death." V.I. R. Civ. P. 25(a)(1). "When interpreting a rule, courts first look to the words of the rule and if the words are plain, the rule's plain meaning controls." *In re: Asbestos, Catalyst & Silica Toxic Dust Exposure Litig.*, 68 V.I. 494, 501 (Super. Ct. 2018) (citing *Bryan v. Fawkes*, 61 V.I. 416, 457 (2014)). To construe "two years after the death" to mean "two years after the [suggestion of] death" would be to rewrite the rule. Just as "'courts are not authorized to rewrite, revise, modify, or amend statutory language in the guise of interpreting it[,]'" *Rohn & Assocs., LLC v. Marshall A. Bell & Assocs., P.C.*, 2019 V.I. Super 132, ¶ 26 (brackets and citation omitted), courts also cannot rewrite, revise, modify, or amend rules under the guise of interpretation. The Supreme Court of the Virgin Islands can amend rules if, as in *Anderson*, a revision is required. But the Superior Court of the Virgin Islands cannot.

¶43     Moreover, assuming, *arguendo*, that Rule 6(b) of the Virgin Islands Rules of Civil Procedure could apply to excuse the failure to comply with the two-year deadline in title, 5 section 78 of the Virgin Islands Code or Rule 25(a) of the Virgin Islands Rules of Civil Procedure, the Court cannot find good cause here. Regarding two of the *Refinery Worker* cases, Vishnu passed away on October 9, 2008, three months after his complaint was filed. Sandra filed an *ex parte* petition to be appointed personal representative of Vishnu's estate a year later, on November 5, 2009, which the Court (Steele, J.) granted on May 5, 2010. Yet Sandra did not file a motion in *Subnaik* to substitute until June 10, 2015—three years after Hess and HOVIC had moved, on August 16, 2012, to dismiss because Vishnu had died. Thus, Vishnu's death had been suggested on the record in *Subnaik* approximately three years before Sandra filed her motion. Similarly, James died on October 1, 2011. His wife, Lynette, filed an unsigned, *ex parte* petition with the Probate Division on October 15, 2013, to be appointed personal representative. The petition was refiled on November 17, 2014 because it lacked a signature. The Court (Camacho. M.) granted the petition on November 24, 2014. Yet, Lynette did not file her motion in *Hughes* to substitute until approximately six months later, on May

14, 2015, but nearly four years after James had died.

¶44     The analysis is the same for the *Alumina Dust Claims* cases. Arnim passed away on April 12, 2013. Frederick filed an *ex parte* petition with the Probate Division approximately five years later, on March 2, 2018. Counsel represents that his "office lost contact with his," meaning Arnim's, "aged *widow*." (F. Metivier's Mot. to Extend Time for Filing Substitution per 6(b)(1) of V.I. R. Civ. P. at 1, filed June 6, 2018 (emphasis added).) Counsel eventually located Frederick and petitioned the court for his appointment. But counsel's own motion reveals that he knew that Arnim had died because he lost contact with Arnim's widow, meaning he had been in contact with her and knew that Arnim had passed. No excuse is proffered to explain why five years passed other than counsel's failure to keep in touch with his clients. But counsel no longer had a client once the plaintiff died. "'Cases belong to the parties, not the attorneys.'" *Arno v. Hess Corp.*, 2019 VI Super 140, ¶ 20 (ellipsis and citation omitted). The Court, likewise, cannot find good cause in *Prime*. First, Hollis failed to disclose the date of Samuel's death in her August 5, 2019 motion, which is troubling, because LMC represented that Samuel died on January 9, 2010. Thus, it appears Hollis was attempting to conceal the nine year delay. Because she did not disclose the delay, she also did not argue good cause. It was in her reply, filed by a different attorney, where she argued good cause. But arguments raised for the first time in a reply are deemed waived. *See Der Weer v. Hess Oil V.I. Corp.*, 64 V.I. 107, 121 (Super. Ct. 2016) ("Ordinarily, when a party raises a new argument in its reply, the argument 'is deemed waived because the opposing party typically does not have the opportunity to respond.'" (quoting *Perez v. Ritz-Carlton (V.I.), Inc.*, 59 V.I. 522, 528 n.4 (2013)).

¶45     Lastly, the Court also cannot find good cause in the *Bauxite / Halliday* case. In her initial motion, which the Court struck for failure to follow the Standing Orders governing the Complex Litigation Division, Tamyka did not argue good cause. She simply moved for permission to substitute on John's behalf. Only after LMC filed its opposition, which was also struck, did Tamyka raise good cause in her renewed motion. In support she submitted an affidavit stating the steps she took after her father's death on October 17, 2016, to learn if he had a lawsuit. She did not know that he did, she stated, but she was told John had an attorney. Rather than come to the Superior Court of the Virgin Islands or the District Court of the Virgin Islands—the two trial courts of record in the Territory—Tamyka instead went to Attorney Lee Rohn's office because her office "handles

hundreds of lawsuits for men that worked at the refinery." (T. Khan Affirm., filed Aug. 26, 2019.) Attorney Rohn's office had no case for John. But Tamyka did not give a timeframe for when she reached out to Attorney Rohn's office. It was not until early 2019 that she learned from a friend of her father's that "an Attorney on St. Thomas was looking for [her] father or his family to discuss [her] late father's case." *Id.* at 2. If good cause were a factor, Tamyka may have shown it. Immediately after someone one passes, substituting into pending lawsuits may not necessarily be at the forefront. But unlike the federal rule, which allows for consideration of good cause because the time for substitution is short, a mere 90 days from the date death is suggested, the Virgin Islands rule and statute both provide two years. Two years is sufficient time for heirs and attorneys to substitute. Tort claims, which would have abated at common law, must be filed within the same time. This Court holds that because the two-year deadline in section 78 was incorporated into Rule 25, good cause and excusable neglect are not factors for consideration in a motion to substitute.

¶46     Again, the Court reaffirms "that section 78 of title 5 of the Virgin Islands Code . . . is akin to a statute of limitations." *Martinez*, 69 V.I. at 524. And the defense of failure to timely revive a lawsuit that abates upon the death of the plaintiff must be raised at the earliest opportunity or else it is waived. Here, LMC timely challenged substitution in *Metivier* and *Prime*, LMC and Glencore timely challenged substitution in *Weekes*. Arnim died on April 7, 2013. The motion to substitute was filed on June 6, 2018, nearly five year later. Samuel died on January 9, 2011. The motion to substitute was filed on August 6, 2019, more than eight years later. And John died June 10, 2015. The motion to substitute was filed August 26, 2019, over four years later. Each motion was filed more than two years after the plaintiff's death. Accordingly, the Court will deny the motion to substitute and dismiss all three cases entirely. All remaining defendants timely opposed substitution.

¶47     Hess and HOVIC timely challenged substitution in *Hughes* and *Subnaik* Litwin did not in *Hughes* nor did John Crane in *Subnaik*. James died on October 1, 2011. Lynette filed her motion to substitute on May 14, 2015, after Hess and HOVIC moved to dismiss for failure to substitute. Litwin did not join Hess' and HOVIC's motion or oppose Lynette's motion. Instead, Litwin served discovery demands. Vishnu died on October 9, 2008, three months after his case was commenced. Sandra filed her motion to substitute on June 10, 2015, approximately seven years later. Hess and HOVIC timely challenged substitution. John Crane did not. Accordingly, the Court will grant Lynette's motion and

Sandra's motion, but dismiss Hess and HOVIC from both cases.

¶48    The Court will also grant Altina's motion in *Hazell* but dismiss Hess and HOVIC. Only in *Hazell*

could the motion be considered timely. Henry died on July 19, 2013. The motion to substitute was

filed on July 8, 2015, with eleven days remaining on the two-year deadline. But the motion does not

have a certificate of service. "'A certificate of service is *prima facie* evidence of the fact of service.'"

*Ayala v. Lockheed Martin Corp.*, 67 V.I. 290, 297 (Super. Ct. 2017) (citation omitted). "'Indeed, the

purpose of a certificate of service is to inform the court that the paper has been served on other

parties.'" *Id.* (citation omitted). But when the Court questioned counsel for Hess and HOVIC and

counsel for John Crane if they were served with Altina's motion, both stated that they were not.

Motions filed but not served are not properly before the court. *Accord Rivera v. M/T Fossarina*, 840

F.2d 152, 154 (1st Cir. 1988) ("The timeliness of a motion to alter or amend a judgment is

determined by the date it is served, not by the date it is filed.") (collecting cases); *Neuendorf v. St.*

*Joseph's Hosp.*, No. CV 12-2724-PHX-RCB (DKD), 2014 U.S. Dist. LEXIS 61900, at *10 (D. Ariz. May 2,

2014) ("Defendant United States of America has not been served. Accordingly, Plaintiff's Motion is

not properly before the Court and will be denied."); *Cabrera v. Tronolone*, 500 A.23d 755, 756-57

(N.J. App. Div. 1985) (affirming denial of motion for new trial filed but not served within required

time set by rule); *Phillips v. Patterson Ins. Co.*, 734 So. 2d 1285, 1288 (La. Ct. App. 1999) (vacating

summary judgment because motion and accompanying affidavits were filed but affidavits not

served on plaintiff). Nearly five years has passed, and Altina's motion remains unserved. Section 78

and Rule 25 both require a motion to substitution and motions must be served on all parties. *Cf.*

*Ayala*, 67 V.I. at 299 ("Since the Superior Court's rules and Virgin Islands statutes [we]re silent,

Federal Rule of Civil Procedure 5 would apply through the Superior Court Rule 7. Federal Rule 5

requires that every written motion be served on all of the parties." (citing Fed. R. Civ. P. 5(a)(1)(D)-

(E)). Rule 6(b) might have excused Altina's neglect in failing to *serve* her motion if good cause were

shown. But, after learning at the October 16, 2019 hearing that the motion was not served, Altina

has not attempt to show good cause. Clearly, a motion not served after five years is not properly

before the Court. Yet, even though Hess and HOVIC were not served, they both timely challenged

substitution at the earliest opportunity. (*Cf. Refinery Worker* Tr. 41:14-15 ("Attorney Alkon and I got

together and we met and conferred at least two times last week and we put this list together and

*In re: Deceased Plaintiffs*
Case Nos. SX-06-CV-198, -221; SX-08-CV-056, 227, -229, -273, -295; SX-11-CV-244
**MEMORANDUM OPINION**
Page 32 of 33

2020 VI Super 53

it's not on the list. I even put a footnote I think in our June filing that said, or in one of my motions recently that said: Footnote, I believe that Mr. Hazell died and we anticipate a motion for substitution coming in and we're going to oppose it.").) John Crane did not. For this reason, the Court finds that John Crane waived the defense. *Accord Jones*, 68 V.I. at 180 ("[F]ailure to raise the timeliness of a substitution motion means the untimeliness defense is either waived or forfeited."). Thus, the Court will grant Altina's but dismiss Hess and HOVIC from *Hazell*.

¶49 That leaves only *Miller* and *Barbell*. Frankie died on May 23, 2011. Nine years have passed, and no motion has been filed. But Frankie's death was suggested on the record on April 24, 2015, when Hess and HOVIC moved to dismiss for failure to timely substitute. Barbell died on November 10, 2010. Barbell's death was not suggested on the record of his case. But his death is a matter of public record because Maxima filed a petition for appointment as personal representative to continue his claims in the *Cornwall* class action lawsuit, specifically against HOVENSA in the bankruptcy proceedings. Maxima did not file a motion to substitute in *Barbell*, however, and nearly ten years have passed, and Barbell's case remains pending. So does Attorney Alkon's motion for leave to withdraw, though, technically, that motion is moot since "'death terminates the attorney-client relationship.'" *Martinez*, 69 V.I. at 531 (quoting *Jones*, 68 V.I. at 189).

¶50 Courts can take judicial notice of the death of a party. *Cf. People ex rel. J.G.*, 59 V.I. 347, 365 n.16 (2013) (courts can take judicial notice of death certificates); *accord Johnson v. Morgenthau*, 160 F.3d 897, 898 (2d Cir. 1998) ("In this case, no party has suggested Johnson's death on the record. But because Johnson's sister-in-law has provided the Court with a copy of Johnson's death certificate, we may take judicial notice of the fact that Johnson is dead."); *Kudasik v. Nicholson*, No. 05-3526, 2007 U.S. App. Vet. Claims LEXIS 1438, *1 (Vet. Ct. App. Sep. 14, 2007) ("The Court takes judicial notice of the fact that the Social Security Death Index reports that Mr. Kudasik died on February 10, 2007."); *Wilson v. Gordon & Wong Law Grp., P.C.*, No. 2:13-cv-00609-MCE-KJN, 2013 U.S. Dist. LEXIS 180366, *11 (E.D. Cal. Dec. 23, 2013) ("Other district courts have taken judicial notice that a person is deceased based on an obituary published in a newspaper." (citing *United States v. Beeman*, 1:10-CV-237-SJM, 2011 U.S. Dist. LEXIS 80057 (W.D. Pa. July 22, 2011)); *Bernard v. E. Stroudsburg Univ.*, No. 3:09-CV-00525, 2016 U.S. Dist. LEXIS 22573, at *56 n.15 (M.D. Pa. Feb. 24, 2016) ("[T]he mandatory language of Federal Rule of Civil Procedure 25(a), requiring that 'the

action by or against the decedent must be dismissed' if no motion for substitution is made by any party or the decedent's successor or representative, allows the Court to *sua sponte* dismiss the decedent, even in the absence of a motion to dismiss." (citing *Fossyl v. Milligan*, 317 F. App'x. 467 (6th Cir. 2009)). *But see Bluth v. Islamic Republic of Iran*, 203 F. Supp. 3d 1, 22 n.17 (D.D.C. 2016) ("Our Court of Appeals has ruled that the Court may, *sua sponte*, substitute an appropriate person, such as a close relative, as a representative of her estate . . . ."). In *Johnson*, the United States Court of Appeals for the Second Circuit concluded—after learning that the appellant had passed away, but no one moved to substitute in his place—that

> the best course under these circumstances is to dismiss Johnson's appeal without prejudice to the right of Johnson's personal representative to seek reinstatement of the appeal on Johnson's behalf—a disposition that we base on the inherent power of this Court to manage and control its docket. In so holding, we note that this disposition is consistent with decisions of other courts that have addressed similar issues.

*Johnson*, 160 F.3d at 898-99 (footnote omitted). The Court agrees with *Johnson* and will dismiss *Miller* and *Barbell* without prejudice and sever UOP's crossclaim against Litwin in *Barbell*. Ten years have passed since Barbell died and nine years since Frankie died. No one has come forward to continue either case and their attorney's authority to represent them terminated upon their deaths. Courts cannot keep cases pending indefinitely. The only course under such circumstances is to dismiss both cases without prejudice and sever UOP's crossclaim against Litwin.

### III.    CONCLUSION

¶51    For the reasons stated above, the Court concludes the motions to substitute must be denied in *Metiver*, *Prime*, and *Weekes*. More than two years passed since the plaintiffs died. LMC and Glencore timely opposed substitution. The motions to substitute will be granted in part in *Hughes*, *Hazell*, and *Subnaik* but Hess and HOVIC will be dismissed from all three cases as they timely opposed substitution. Lastly, the Court will take judicial notice of the death of the plaintiffs in *Miller* and *Barbell*. Both cases will be dismissed without prejudice.

**Date:** April 26, 2020

ATTEST:

*TAMARA CHARLES*
CLERK OF COURT

COURT CLERK

4/26/2020

_____
**ROBERT A. MOLLOY**
Senior Sitting Judge